STATE of Missouri, ex rel. ST. LOUIS LAND CLEARANCE FOR REDEVEL-OPMENT AUTHORITY, Relator,

v.

The Honorable Michael F. GODFREY, Judge of the Circuit Court of The City of St. Louis, Missouri, Respondent.

No. 34017.

St. Louis Court of Appeals, Missouri.

Sept. 28, 1971.

Irvin Dagen, Husch, Eppenberger, Dono-hue, Elson & Cornfeld by Shulamith Simon, St. Louis, for relator.

Kramer, Chused & Kramer, St. Louis, for respondent.

CLEMENS, Commissioner.

We granted a preliminary writ to prohibit the respondent judge from compelling the relator, as defendant below, to answer plaintiffs' interrogatories. The relator's primary objection was that the interrogatories would require "thousands of answers" and impose an undue burden on relator and therefore were oppressive. We summarize plaintiffs' lawsuit and interrogatories.

By their petition for damages plaintiffs Lorimer and Ruby Mathews sued St. Louis Land Clearance for Redevelopment Authority, hereafter called defendant, for buying up residences in plaintiffs' neighborhood with such lack of reasonable care that the value of plaintiffs' property was unduly depreciated. Specifically, plaintiffs charged defendant bought other buildings in plaintiffs' neighborhood and allowed them to remain vacant for an unduly long time thereby causing the buildings, including plaintiffs', to become vacant and vandalized. For present purposes we take plaintiffs' allegations at face value and consider the interrogatories.

Replying to Interrogatory Number 1 defendant identified its affiant; by Number 2 defendant gave plaintiffs the parcel numbers and street addresses of 121 tracts it had acquired in a nine-square-block area surrounding plaintiffs' residential property. Here are the eleven challenged interrogatories in capsule form.

Number 3 asked the names and addresses of owners and lienholders of the 121 parcels on each of two separate dates. By four sub-questions the interrogatory asked for specific financial details on each of defendant's 121 purchases.

Number 4 called for minute details of defendant's appraisals and purchase negotiations on each parcel.

Number 5 asked for similar details of all offers, negotiations and sales prices of each parcel defendant has disposed of.

Number 6 called for details of demolition and improvement of each parcel and whether made by the original owner, the defendant or by the defendant's purchaser.

Number 7 sought the names of every contractor or subcontractor participating in such demolition or improvement.

Number 8 further asked the names and addresses of bulldozer operators who worked in one square block during 1967 and 1968.

Number 9 asked for names and addresses of every person who on behalf of the defendant had communicated orally or in writing with plaintiffs or their tenants about plaintiffs' property and the details of those communications.

Number 10 called for similar information concerning each of the other 120 properties.

Number 11 requests specific and minute details about each owner or occupant who was "relocated" from the area by or with defendant's knowledge.

In all there were 22 questions and sub-questions, most calling for multiple answers. Since the questions and sub-questions in Interrogatories 3, 4, 5 and 6 apply to each of the 121 parcels, those four interrogatories alone pose 2,420 questions. Defendant does not exaggerate its contention that the interrogatories would require "thousands of answers."

Defendant objected generally and specifically to interrogatories 3 to 11, contending primarily that answering would be unduly burdensome and oppressive. This accords with the proviso of Civil Rule 56.01(a), V.A.M.R.: "The number of interrogatories or sets of interrogatories to be served is not limited except as justice requires to protect the party from annoyance, undue expense, embarrassment or oppression."

As our supreme court said in State ex rel. Norfolk & Western Ry. Co. v. Dowd, Mo., 448 S.W.2d 1: "It is possible that a trial court could be presented with such a mass of interrogatories that the drastic action of striking them all would be called for, State ex rel. Williams v. Vardeman (Mo.App.) 422 S.W.2d 400, 409." The court held this was primarily a question addressed to the trial court's discretion but added: "The proper function of the appellate court in the situation before us is to determine whether as a matter of law the trial court abused its discretion in overruling the objections to the interrogatories." In applying that principle we are hesitant to go behind the trial court's ruling but the unusual scope of these interrogatories compels us to do so here.

Several United States district courts have considered oppressive interrogatories under Federal Rule of Civil Procedure 33, from which Missouri's discovery rules were patterned. These decisions are not binding on us but we find some persuasive. In Schotthofer v. Hagstrom Construction Co., U.S.Dist.Ct., D.C., 23 F.R.D. 666, the court said: "Voluminous interrogatories requiring written answers involving minute factual details may be unreasonable and impose an undue burden upon the party to whom they are addressed."

■ As said in State ex rel. Hof v. Cloyd, Mo., 394 S.W.2d 408 [9]: "The provisions for discovery by written interrogatories are liberal but they are not unlimited." It is obvious that the very quantity of the interrogatories before us, and the mass of minute factual details required

to answer them, would impose a heavy burden upon the defendant. In determining the reasonableness or unreasonableness of that burden we look beyond the vast quantity and consider two closely related factors. First, is the information sought readily available to plaintiffs by less burdensome means? Second, do the interrogatories unduly require defendant to prepare plaintiffs' case?

In both their brief and oral argument plaintiffs deny defendant's answering would be burdensome, contending that under defendant's own regulations "it is required to maintain a running record in summary form showing major actions and items of information on each parcel * * *." Implicit in this contention is the plaintiffs' admission that the information they seek can be had by plaintiffs' inspecting defendant's records under Civil Rule 58.01, V.A.M.R., Discovery and Production of Documents and Things for Inspection —Copying or Photographing. We deem this factor worthy of our consideration in determining whether answering the interrogatories is unduly burdensome and therefore oppressive.

Federal cases construing Federal Rule of Civil Procedure 33 so hold. In Klein v. Leader Electric Corporation, U.S.Dist.Ct., N.D.Illinois, E.D., 81 F.Supp. 624 [1, 2], the court said: "Plaintiff's objections to the interrogatories are well taken. The books and records of the Bankrupt are in the possession of [respondent] plaintiff, as Trustee, and are, therefore, readily available to Leader [the interrogator] at all times for the purpose of inspection. I can perceive no valid reason why one party should be obliged to prepare his opponent's case for him. Although there is some authority to the contrary, I consider the better rule to be expressed in Byers Theaters v. Murphy, D.C., 1 F.R.D. 286, 289: 'It is also obvious that one party should not be allowed to require another to make investigation, research or compilation of data or statistics for him which he might equally as well make for himself.' Also Cf. Coca Cola Co. v. Dixie-Cola Laboratories, D.C., 30 F.Supp. 275."

Similarly, in Porter v. Central Chevrolet, Inc., U.S.Dist.Ct., N.D.Ohio, E.D., 7 F.R.D. 86 [1], the court condemned interrogatories where "[t]he information sought to be elicited is contained in the books and records of the defendant corporation. The interrogatories, if ordered to be answered, can only be answered by reference to the very records which the Administrator [the interrogator] has a right to inspect, and which the complaint indicates already have been partially examined."

We also give weight to defendant's complaint under the second related factor: that by these interrogatories the plaintiffs are seeking to compel defendant to summarize its records and deliver the condensed product to plaintiffs in tabulated form, and thereby prepare plaintiffs' case for trial. This too has been held to be a factor of oppression under Federal Rule 33, supra. In Porter v. Montaldo's, U.S.Dist.Ct., N.D.Ohio, E.D., 71 F.Supp. 372, as here, "the plaintiff's demand is for evidentiary facts down to the last minute detail." The court held there is a limit to such interrogatories, saying "it is neither reasonable nor proper to expect the defendant to perform such services for the sole benefit of the prosecuting agency and at his own cost, to his own consequent damage * * * This is especially true where the proposing party seeks to * * * shift the labor and expense of the preparation of his own case to his adversary, as the plaintiff here seeks to do." As tersely put in a similar case, Aktiebolaget Vargos v. Clark, U.S.Dist.Ct., D.C., 8 F.R.D. 635: "A litigant may not compel his adversary to go to work for him."

In sum, these interrogatories impose a massive work load on defendant; the information sought is readily available to plaintiffs by inspecting defendant's records; the interrogatories would unreasonably shift the labor and responsibility of plaintiffs' trial preparation onto the de-

fendant. Considering these factors together we conclude that plaintiffs' interrogatories passed permissible bounds and subjected the defendant to an oppressive burden.

Our ruling on interrogatories numbered 3 to 11 as a whole makes it unnecessary for us to pass on defendant's *specific* objections to certain interrogatories. These objections have been thoroughly briefed and in seeking further discovery plaintiffs should give consideration to them.

Our preliminary writ is made permanent.

PER CURIAM.

The foregoing opinion of CLEMENS, C., is adopted as the opinion of this court. Accordingly, our preliminary writ is made permanent.

BRADY, P. J., and DOWD and WOLFE, JJ., concur.