**STATE of Missouri ex rel. LITTON BUSINESS SYSTEMS, INC., Relator,**

v.

**The Honorable Keith P. BONDURANT, Judge, Sixteenth Judicial Circuit Court of Missouri, Div. # 6, Respondent.**

No. KCD 27530.

Missouri Court of Appeals, Kansas City District.

May 5, 1975.

William R. Fish, Knipmeyer, McCann, Fish & Smith, Kansas City, for relator.

Charles L. House, John S. Black, Swanson, Midgley, Eager, Gangwere & Thurlo, Kansas City, for respondent.

Before PRITCHARD, C. J., and SHANGLER, DIXON, SWOFFORD, WASSERSTROM, SOMERVILLE and TURNAGE, JJ.

WASSERSTROM, Judge.

Relator Litton Business Systems, Inc., filed application for a writ to prohibit the respondent trial judge from enforcing his order requiring relator to answer certain interrogatories. This court issued its preliminary rule of prohibition on September 4, 1974.

The underlying litigation before respondent was instituted by a petition of Litton Industries Credit Corporation against Broadway Motors, Inc., an automobile dealership in Kansas City, Missouri. Plaintiff seeks to recover $26,100.36 as the balance due on an agreement dated .October 21, 1971, by Broadway to lease certain computer equipment, together with interest from

October 21, 1972, and an attorney's fee of $5,000. The petition alleges that the lease agreement was assigned to plaintiff by relator. Broadway obtained leave to and did bring relator into the case as an additional counterclaim defendant.

Broadway then filed its answer and counterclaim in which it alleges that at the time of the lease agreement relator made certain representations with respect to the equipment and that it warranted and guaranteed certain results to be obtained by Broadway from the use of this equipment. The essence of the claimed representations and warranties respected the ability of the equipment to enable Broadway to employ fewer persons; that it would perform certain business functions and produce certain records; and that the equipment, programs and technical assistance to be furnished would enable Broadway to reduce its costs and expenses. Broadway alleges that the representations were false and fraudulent and that the warranties have been breached, for which it prays actual damages of $29,310.26 and punitive damages in the amount of $60,000.

Broadway then followed up these pleadings by the filing of interrogatories, those now in dispute being as follows:

"7. For automobile dealerships currently subscribing to and using Litton's accounting system, or any component thereof, please state:

(a) The name, address and telephone number of such automobile dealership.

(b) Whether such automobile dealership subscribed to Litton's LEADS program, accounts receivable program or payroll program. If all of the aforementioned programs are not leased, which programs are leased.

(c) The date when such automobile dealership entered into a lease of Litton's accounting system.

"8. For each automobile dealership subscribing to Litton's accounting system prior to October 21, 1971, please state:

(a) The name, address and telephone number of such automobile dealership.

(b) Whether such automobile dealership subscribed to Litton's LEADS program, accounts receivable program and payroll program. If all of the aforementioned programs were not leased, which programs were leased.

(c) The date upon which such automobile dealership entered into a lease of Litton's accounting system.

"9. For each automobile dealership, other than defendant, which has returned, discontinued or refused to further rent Litton's accounting system, or any part or program thereof, please state:

(a) The name, address and telephone number of such automobile dealership.

(b) Whether such dealership initially leased Litton's LEADS program, accounts receivable program, and payroll programs. If all of the aforementioned programs were not leased, which programs were leased.

(c) If the entire accounting system was not returned discontinued or refused, the components or parts thereof which were.

"13. If Litton's accounting system was tested, prior to marketing, in an automobile dealership, please state:

(a) The name, address and telephone number of such automobile dealership.

(b) Whether such automobile dealership paid a rental fee to Litton for the use of Litton's accounting system.

(c) Whether such automobile dealership received any compensation or benefits from Litton, other than the use of Litton's system.

(d) The dates of the testing period or periods.

(e) Whether every program, and every component thereof, of Litton's accounting system was tested at such dealership.

(f) If every component and program of Litton's accounting system was not tested at such dealership, please state the com-

ponents and programs which were not so tested, and the reason or reasons why they were not tested.

"15. Please state what improvement or changes, if any have been made, between October 21, 1971 and March 20, 1973, in the machinery, programs and sales promotional techniques concerning Litton's accounting system for automobile dealerships.

"17. Please state what defects, deficiencies, limitations or shortcomings have been discovered in Litton's accounting system for automobile dealerships between October 21, 1971 and March 20, 1973.

"18. Please list the name, address, telephone number, employer and job title of all individuals who have knowledge of defects, deficencies and shortcomings listed in the answer to Interrogatory No. 17 above."

Relator promptly objected to those interrogatories for the reason that "they are too broad and all inclusive and seek information not relevant or material to the issues involved in this case, nor are they designed to reasonably lead to the discovery of admissible evidence." Those objections were overruled by respondent on May 23, 1974, subject, however, to the following provision: "The Court will duly consider any motions for protective orders that Litton Automated Business Systems, Inc. may file regarding the information sought by these interrogatories."

Pursuant to that invitation, relator did file a motion for protective order. The motion made reference to the great expense which it would necessarily incur in compiling the information and preparing answers to interrogatories. The protective measures requested by relator in its motion were: 1) that relator be permitted to make available to Broadway the files from which the information sought could be obtained; or alternatively, 2) that Broadway be required to post a bond to assure relator of recovering the cost of answering interrogatories in the event the court should require Broadway to pay those costs as part of accumulated court costs upon completion of the case; and 3) that Broadway be prohibited from making any contact with relator's customers who would be disclosed by the answers to interrogatories.

In support of its claim for the protective order, relator relied upon an affidavit of Paul J. Olivo, its Division Counsel. The gist of Olivo's affidavit was that the cost of answering the interrogatories in question would be an estimated $28,310. Olivo explained the large size of this estimated cost on the ground that there is no central source from which the answers to those interrogatories can be obtained; that the requested information "is not categorized in the manner in which it is being sought;" and that in order to compile the data requested records would have to be searched in each of defendant's 60 district offices. Olivo further stated that a sample survey taken by him indicated that a questionnaire would have to be developed from a central location to be sent to each of the 60 district offices at a cost of $110; that each of the district offices would have to assign people to review files and break down and study the records available at a cost of $470 per district office for a total cost for all the district offices of $28,200. Olivo further stated that complaints by customers respecting new computer installations are not kept by relator in the course of business, that analyses of such complaints might be required by expert programmers and could be developed only by personal contact type of effort and that the cost of this latter work is not reflected in the $28,310 cost estimate. Finally, Olivo set forth that relator had developed its customers only after years of concentrated sales effort, that the discovery of this list by interrogatories would greatly benefit Litton's competition, and that contact by Broadway with relator's customers would of necessity disclose the present litigation which would disturb

the customer relationship and cause irreparable damage to relator.

By order dated August 2, 1974, respondent overruled the motion for protective order, stating: "The Court, having duly considered said motion, finds same to be without merit and further, that the relief sought is highly irregular and totally beyond the scope of protection contemplated by Civil Rule 57.01(c)." Relator was ordered to file answers no later than August 14, 1974, with a statement by the court that, "[u]pon failure to comply with this order, the Court will entertain an appropriate motion by defendant."

On this application for prohibition against enforcement of the latter order, relator argues that respondent exceeded his jurisdiction for three reasons: a) because the interrogatories were irrelevant; b) because the interrogatories were oppressive and would require undue expense and effort to answer them; and c) because respondent refused the motion for a protective order. The first and third of these assignments are easily disposed of and will, therefore, be cleared away before addressing the crucial second point.

## I.

## RELEVANCY

■ At the time of respondent's ruling, the scope of interrogatories was governed by former Rules 56.01 and 57.01(b), V.A. M.R. The counterpart new Rules 57.01(b) and 56.01(b)(1) set forth substantially identical provisions. Under those rules interrogatories may properly inquire into any matter relevant to the subject matter involved in the pending action, and it is not ground for objection that the facts sought would not be admissible evidence if it appears reasonably calculated to lead to the discovery of admissible evidence. State ex rel. Williams v. Vardeman, 422 S.W.2d 400, 406 (Mo.App.1967). The determination of relevancy under this standard is primarily a matter for the trial court, and an appellate court will not interfere when there is any reasonable basis for the trial court either permitting or denying the interrogatory. State ex rel. Norfolk & Western Ry. Co. v. Dowd, 448 S.W.2d 1 (Mo. banc 1969).

■ Judged in the light of the foregoing principles, the ruling of the trial court cannot be said to be unreasonable on the ground of relevancy. With respect to each of the interrogatories an at least reasonable argument can be advanced that each is reasonably calculated to lead to the discovery of admissible evidence. Thus, the first interrogatory in question, No. 7, inquires, as to automobile dealers currently subscribing to relator's accounting system. Identification of these customers could well enable Broadway to find out by further investigation whether any of those other customers had experienced defects in equipment and programs similar to those of which Broadway complains in this litigation. Such adverse experience on the part of other customers would tend to support Broadway's allegations concerning breach of warranty and guarantee.

Interrogatory No. 8 relates to automobile dealers who subscribed to relator's system prior to October 21, 1971, the date of the Broadway leasing contract with relator. The identification of these customers would also tend, just as Interrogatory No. 7, to lead to evidence supporting Broadway's allegations of breach of warranty and guarantee. In addition, any defects which had been discovered and communicated to relator prior to October 21, 1971, would tend to prove scienter, thus supporting Broadway's allegations of fraud.

Interrogatory No. 9 seeks to identify any of relator's automobile dealer customers who have returned, discontinued or refused to further rent relator's accounting systems. This interrogatory is similar to, but even more pointed than Interrogatories 7 and 8, and is relevant for the reasons already stated.

Interrogatory No. 13 inquires into tests, if any, made by relator prior to the marketing of its accounting system to automobile dealers. Answer to this interrogatory would tend to disclose any inherent defects in relator's equipment and programming system. This evidence could also tend to show knowledge by relator of the falsity of representations made to Broadway or a reckless disregard of whether such representations were true or false.

Interrogatory No. 15 seeks to discover what changes in automobile dealership systems were made by relator subsequent to October 21, 1971. The answer to this interrogatory would tend to sift out other customers whose accounting services from relator were significantly different from those furnished to Broadway, thus leaving those most likely potential witnesses who used equipment most closely akin to that supplied to Broadway. If a given customer had obtained poor results, Broadway would be protected from putting on the testimony of that witness only to have relator counter that the equipment had been altered from that supplied to Broadway so that the experience of the witness was not comparable. Likewise, if relator offered the testimony of customers to the effect that their experience with Litton equipment had been satisfactory, Broadway would be in a position to know whether the equipment and programs used by those customers were comparable to that which had been supplied to it.

Interrogatories No. 17 and 18 relate to defects in relator's accounting system which relator has actually discovered. Interrogatory No. 18 goes on to seek identification of witnesses having knowledge of such defects. The information in answer to both of those interrogatories would bear directly upon the issue of breach of warranty and guarantee.

Accordingly, no valid objection lies to any of these interrogatories on the basis of lack of relevancy.

## II.

## PROHIBITION AGAINST CUSTOMER CONTACT

■ Broadway is not a competitor of relator, and its obtaining of a list of relator's customers therefore could not give it any unfair trade advantage. Nor does relator allege that Broadway threatens to disclose the list to any competitor of relator. Nor does relator point to any other unfair tactic which has been actually perpetrated or threatened by Broadway. In the absence of such evidence, the court should not presume that Broadway or its attorneys would abuse the legal process or misuse the information obtained by means of legal discovery. Johnson Foils, Inc. v. Huyck Corp., 61 F.R.D. 405, 410 (D.C.N.Y.1973); Williams v. Johnson & Johnson, 50 F.R.D. 31, 33 (D.C.N.Y.1970). Volkswagenwerk Aktiengesellschaft v. Westburg, 260 F.Supp. 636 (D.C.Pa. 1966), cited by relator, is distinguishable in that the protective order in that case was granted only after proof that the plaintiff had been making improper remarks to defendant's customers whose identity had been disclosed by answers to interrogatories. Unlike the situation in the case last cited, no need has been demonstrated here for the protective order under discussion. The denial of this relief was well within respondent's discretion.

## III.

## OPPRESSIVENESS

The appearance of hardship which would be caused to relator by these interrogatories was sufficiently strong so that respondent invited relator to file a motion for a protective order. The order of August 2, 1974, can and should be read as meaning that it was denied only because respondent concluded that the relief sought was improper as a matter of law because "totally beyond the scope of protection contemplated by Civil Rule 57.01(c)." The same appearance

of hardship arising from the showing made in the Olivo affidavit motivated this court to grant its preliminary writ in order to explore the legal availability of some appropriate relief. However, a change in that procedural law since the issuance of that preliminary rule now makes recourse to prohibition unnecessary and inappropriate.

On January 1, 1975, new discovery rules became effective in this state. New Rule 57.01(c) is innovative in Missouri procedure and is directly applicable to the present situation. This new provision is as follows:

"Option to Produce Business Records. Where the answer to an interrogatory may be derived or ascertained from the business records of the party upon whom the interrogatory has been served or from an examination, audit or inspection of such business records, or from a compilation, abstract or summary based thereon, and the burden of deriving or ascertaining the answer is substantially the same for the party serving the interrogatory as for the party served, it is a sufficient answer to such interrogatory to specify the records from which the answer may be derived or ascertained and to afford to the party serving the interrogatory reasonable opportunity to examine, audit or inspect such records and to make copies, compilations, abstracts or summaries."

This new provision is taken from Rule 33(c) of the Federal Rules of Civil Procedure and should be understood as having the same purpose as did the adoption of the federal rule. The latter purpose is explained in the Notes of the Federal Advisory Committee as follows:

"This is a new subdivision, adapted from Calif.Code Civ.Proc. § 2030(c), relating especially to interrogatories which require a party to engage in burdensome or expensive research into his own business records in order to give an answer. The subdivision gives the party an option to make the records available and place [sic] the burden of research of the party who

seeks the information. 'This provision, without undermining the liberal scope of interrogatory discovery, places the burden of discovery upon its potential benefitee,' Louisell, Modern California Discovery, 124–125 (1963), and alleviates a problem which in the past has troubled Federal courts. . . ."

Inasmuch as the federal practice is relatively new, not many applications in particular factual circumstances have as yet been reported. Nevertheless, both the federal and Missouri rules have the same purpose and objective, and such federal precedent and interpretation as is available is entitled to consideration in construing and applying our new Missouri Rule 57.01(c). State ex rel. Kincannon v. Schoenlaub, 521 S.W.2d 391, decided by the Missouri Supreme Court En Banc April 14, 1975.

The key question with respect to the applicability of Rule 57.01(c) in a given situation such as the one here is whether "the burden of deriving or ascertaining the answer is substantially the same for the party serving the interrogatory as for the party served." With respect to this question, which is identical under Federal Rule 33(c), an authoritative text work, Wright and Miller, Federal Practice and Procedure, Volume 8, § 2178, p. 570, states:

"Whether this is the case will be for the party to whom the interrogatory is directed to resolve in the first instance. If he believes that he is entitled to avail himself of this provision and desires to do so, he will respond to the interrogatory by specifying the records from which the answer may be found and by undertaking to provide the interrogating party with a reasonable opportunity to examine them. If the interrogating party believes that the burden on him to find the answers from the records is substantially greater than it would be on the party who has the records, he may move under Rule 37(a) for a further answer to his interrogatory and the court will then decide whether

the burden on the parties is substantially the same.

"If the court should decide that the burden is not substantially the same and that Rule 33(c) is not applicable, it may still refrain from ordering the interrogatory answered if answering will be unduly burdensome or expensive. And when Rule 33(c) is properly applied, the court may, in a proper case, require the interrogating party to reimburse his opponent for the expense of assembling the records and making them intelligible."

■ In connection with its exercise of the option provided by Rule 57.01(c), no reason can be seen why the responding party should not include as part of that exercise an offer to take such voluntary action as it may desire so as to insure that the burden on the interrogating party would be no greater than it would be upon the responding party. Thus, in the present case, it would appear facially to be more burdensome for Broadway to send its agents to each of relator's 60 district offices than it would be for relator to have its employees already working in those offices search the records. However, no reason is seen why relator in answering these interrogatories, if it exercises the option under Rule 57.01(c), should not be able to include an offer to equalize the burden by bringing all of its pertinent records to one central point in Kansas City, Missouri, for inspection by Broadway. Some other feasible proposal for equalizing the burden may occur to counsel. This would be in accordance with the suggestion made by Judge Simeone and Mr. Walsh in "The New Missouri Rules on Civil Discovery," 30 Journal of The Mo. Bar 463, l.c. 473, that the purposes of these new rules are that of "minimizing court intervention in pretrial discovery and maximizing the free flow of information between parties . . . ."

Along the same prescribed procedure of informal efforts at accommodation between counsel, it should be expected that the attorney for relator will disclose the type of information contained in its files and the manner in which it is recorded; to what extent that data is electronically recorded; and the problems, if any, and cost of retrieval. Relator's counsel should also be prepared to answer the question, much debated before this court, as to why collection of data in each district office will require the services of high salaried employees paid at the rate of $20 per hour. Counsel for Broadway should, in turn, be prepared to modify its requests so as to permit the easiest and least expensive method for furnishing the information really needed by it. Only if these informal procedures fail will it become necessary for the parties to intrude upon the time of the trial court.

■ However, if it should become necessary for the trial court to become involved, then respondent will have the opportunity of further informal explorations with counsel. As indicated by the Supreme Court in State ex rel. Norfolk & Western Ry. Co. v. Dowd, supra:

"He [the trial court] can question the lawyers about the facts and their contentions. This is particularly true as to objections directed to relevancy and undue expense, oppression or annoyance, the very kind involved in the present case. He can do this informally, either in the courtroom or in chambers. He can rule orally, promptly, and without the delay involved in preparing a written opinion about each interrogatory. He can sort out what is really controverted between the parties as compared to what is only controverted on paper much better than an appellate court can ever do. He generally knows what lawyers, if any, tend to abuse the use of interrogatories, either by over-interrogating or by over-objecting."

Moreover, the trial court can also, if necessary, exercise the very broad powers conferred upon him in devising an appropriate

protective order under Rule 56.01(c) and, when appropriate, under Rule 58.01(a). The ruling of August 2, 1974, will and should not preclude a fresh appraisal by respondent of the need for some protective order. This could include, if deemed appropriate by respondent, a requirement that Broadway reimburse relator for the expense of assembling its records and making them available. Notes of the Federal Advisory Committee, 28 U.S.C.A., following Rule 33, p. 322; Wright and Miller, § 2178, p. 571; Concept Industries, Inc. v. Carpet Factory, Inc., 59 F.R.D. 546, l.c. 550 (D.C. Wis.1973); and see Celanese Corp. v. E. I. duPont deNemours & Co., 58 F.R.D. 606 (D.C.Del.1973). See also State ex rel. St. Louis Land Clearance v. Godfrey, 471 S.W.2d 938, 940 (Mo.App.1971), where the St. Louis District of this court prohibited enforcement of interrogatories and relegated the interrogating party to inspection of records, the reason being that "the interrogatories would unreasonably shift the labor and responsibility of plaintiffs' trial preparation onto the defendant."

When the trial court entered its order on August 2, 1974, requiring answers to interrogatories, the intention necessarily was that these be conventional answers in the usual form of specific data in compiled form. When relator filed its application for prohibition, it did so in an effort to be relieved of that type of burden. However, at the present time, the answers need not be in the old conventional form, and instead relator will have an opportunity to escape excessive burdens and expense by use of the option now available for the first time under Rule 57.01(c).

This new option and the procedures opened up in connection therewith have not yet been utilized. For the reasons set forth in State ex rel. Norfolk & Western Ry. Co. v. Dowd, supra, prohibition was seldom appropriate even under the old rules. See "Prohibition—To Prevent Discovery Proceedings," 35 Mo.L.Rev. 533 (1970). For even more reason, there should be little legitimate occasion now for asking the appellate courts to intervene in the interrogatory procedures, since the effective date of new Rule 57.01(c). Certainly no such occasion exists in this case where there has not yet been any opportunity for the parties to pursue the new procedures or for the trial court to exercise the broad discretions now permitted.

The preliminary rule is quashed.

All concur.