STATE of Missouri, Respondent,

v.

Aaron Paul BRUCE, Appellant.

No. 59633.

Supreme Court of Missouri,
En Banc.

April 24, 1978.

Dennis J. C. Owens, Kansas City, for appellant.

John D. Ashcroft, Atty. Gen., Joel Wilson, Asst. Atty. Gen., Jefferson City, for respondent.

David C. McConnell, Kansas City, for amici.

FINCH, Judge.

Defendant appeals from his misdemeanor conviction by jury of possession of 1,788 cartons of unstamped cigarettes for the purpose of sale in violation of § 149.051.[1] Exclusive appellate jurisdiction is vested in this court pursuant to Article V, § 3 of the Missouri Constitution as the issues raised necessitate construction of the revenue laws. We reverse and remand.

The evidence introduced at trial revealed that defendant had been the subject of periodic surveillance by the Bureau of Special Investigation, Missouri Department of Revenue, and the Interstate Revenue Research Center for nearly two months prior to trial. From the testimony of the agents involved in this surveillance, it appeared that defendant had been engaged in the transportation of cigarettes from Asheville, North Carolina, to Kansas City, Missouri, on a highly predictable, recurrent basis. The established pattern was for the defendant to leave Kansas City in his light blue van during the latter part of the week and drive to Asheville. During the trip to Asheville, the curtains on the windows of the van were open and it was observed that the van was empty. Upon his arrival in Asheville, the defendant would proceed to the Morehead Company, a cigarette wholesaler, and load the van with about 50 half-cases of cigarettes containing 30 cartons each. On at least two occasions, the actual transfer of the cigarettes from Morehead's truck took place at a point remote from Morehead's warehouse. After loading, the curtains on the van were closed, secreting the contents from view. On the return trip, defendant had been observed to stop for the night at the Ramada Inn in Cape Girardeau, Missouri. The next day, either Saturday or Sunday, defendant would return to Kansas City. Upon entering Kansas City, with the curtains of the van still closed, defendant would be followed by the agents, but on all but one occasion (the weekend prior to arrest) the agents lost contact with defendant for a brief period after which the van was observed, empty, outside defendant's residence.

On the weekend prior to arrest, the same pattern occurred but this time the agents were able to maintain surveillance of the defendant in Kansas City and followed him to a residence where he and one Howe, suspected to be a cigarette smuggler from other investigations by the agents, were observed unloading the cigarettes from the van into the basement. Howe also had been observed to meet with defendant in a shopping center parking lot just prior to defendant's departure for Asheville on two occasions.

As for the occasion of defendant's arrest, the usual pattern was again observed. On Thursday, November 20, 1975, defendant left his apartment and drove to the Loma Vista shopping center in Kansas City where he met briefly with Howe. Defendant then left the shopping center and proceeded eastbound on I–70 where surveillance was terminated. The curtains again were observed to be open and the van was empty. The next morning, defendant was seen at the offices of the Morehead Company in Asheville. Agents there watched employees load a substantial quantity of half-cases of cigarettes onto a Morehead Company truck which then proceeded to a residence in Asheville. Shortly thereafter, defendant arrived and pulled his van alongside the truck. Defendant and the Morehead em-

---

1. All statutory references are to RSMo 1975 Supp. unless otherwise indicated.

ployees then transferred the cigarettes to the van. Photographs of this activity were introduced into evidence. After the transfer was complete, the van's curtains were closed and defendant departed. He was followed to a point where he proceeded westbound on I–40 and surveillance was again terminated.

Late that evening, defendant was observed crossing a bridge into Missouri and was followed to the Ramada Inn in Cape Girardeau. After a warrant was obtained, police searched the van and discovered 1,788 cartons of cigarettes which bore no Missouri tax stamp. Defendant was immediately taken into custody. The next morning, agents arrested Howe when he arrived at the address where he and defendant had previously been observed unloading cigarettes.

■ Many of defendant's points on appeal may properly be characterized as an assertion that Chapter 149 is facially unconstitutional. It is contended that the tax imposed by the chapter, the stamps required as evidence of the payment of the tax and the penalties for possession of unstamped cigarettes are not limited to sales within the state.[2] More specifically, it is asserted that by reason of this alleged flaw, the statute permits the imposition of criminal penalties for the possession of cigarettes which do not bear a Missouri tax stamp even as to persons who may be merely transporting cigarettes through the state for sale in some other state. This is said to constitute both an infringement of the con-

stitutional right to travel and an undue burden on interstate commerce.

Defendant's position that the statute is not limited to possession of cigarettes sold or intended for sale in Missouri is based primarily on the observation that no express language to that effect is contained in §§ 149.015.1 and 149.051.2, *supra*, note 2. While this observation about the lack of express language is correct, the conclusion drawn therefrom by defendant ignores other provisions which we believe manifest the true legislative intent. For example, express references to the occurrence of a sale *within the state*, are found in the concluding sentence of § 149.015.2, *supra*, note 2, and in the opening phrase of § 149.015.5.[3]

Defendant also relies on the language of § 149.011(12) to support his contention as to applicability of the tax and penalties to possession of cigarettes not sold or intended for sale in Missouri. That section defines "wholesaler" to include one "that carries at all times at his or her principal place of business a representative stock of cigarettes for sale, and that comes into the possession of cigarettes for the purpose of selling them to retailers *or to persons outside or within the state* who might resell or retail the cigarettes to consumers." (Emphasis supplied). This is a definitional section and not a taxing section. It defines or describes an *occupation* or *business.* Moreover, the use of the term "wholesaler" in § 149.051.2 is clearly contrary to defendant's position because it is there used to *exempt* licensed wholesalers from the prohibition against

---

2. Sec. 149.015 provides in part:

"1. A tax shall be levied upon the sale of cigarettes at an amount equal to four and one-half mills per cigarette.

"2. The tax shall be evidenced by stamps which shall be furnished by and purchased from the director or by an impression of the tax by the use of a metering machine when authorized by the director as provided in this chapter, and the stamps or impression shall be securely affixed to one end of each package in which cigarettes are contained. All cigarettes must be stamped before being sold in this state."

Sec. 149.051.2 provides:

"No person, other than licensed wholesalers or other persons as specifically provided for in

this chapter, shall possess for the purpose of sale any cigarettes to which the stamps or meter units required by this chapter are not affixed."

Sec. 149.081 provides:

"A person who violates any provision of this chapter for which no criminal penalty is otherwise provided shall be guilty of a misdemeanor and, upon conviction, shall be punished by confinement in the county jail for a term not exceeding one year, or by a fine of not more than five hundred dollars, or by both such fine and confinement."

3. "In making sales of cigarettes *in this state*
. . . ." (Emphasis supplied).

possession of unstamped cigarettes intended for sale within the state.

Even the most general reading of the chapter reveals a statutory scheme which is obviously directed to collection of tax revenues from sales occurring within the state and providing a means by which the state can monitor such transactions. So interpreted, the premise for defendant's constitutional challenge is refuted. Hence, we need not further consider the asserted constitutional questions.

■ Having concluded that § 149.051.2 must be read to include the words "in this state" after the word "sale," we must now examine defendant's instructional challenges as if the statute expressly so provided.

Verdict-directing Instruction No. 5 told the jury:

"If you find and believe from the evidence beyond a reasonable doubt:

"First, that on November 21, 1975, in the County of Cape Girardeau, State of Missouri, the defendant, Paul Bruce, had in his possession 1,788 cartons of cigarettes for the purpose of sale, and

"Second, that said cigarettes did not have stamps or meter units as required by law, and

"Third, that the defendant, Paul Bruce, was not a licensed wholesaler of cigarettes or a common carrier, then you will find the defendant guilty of possession of unstamped cigarettes for sale.

"However, if you do not find and believe from the evidence beyond a reasonable doubt each and all of the foregoing, you must find the defendant not guilty of that offense."

The first paragraph of the instruction merely requires the jury to find that the cigarettes in defendant's possession were intended for sale and not that they were intended for sale *in Missouri.* As the state

contends, and as our recitation of the evidence at the outset of this opinion clearly indicates, there was indeed substantial evidence before the jury from which it could find that the cigarettes were intended for sale in Missouri. However, the instruction did not call upon the jury to find this as a fact beyond a reasonable doubt. Under the instruction, the jury was bound to return a verdict of guilty even if it determined that the cigarettes were intended for sale in some other state—conduct not proscribed under the statute as we have interpreted it. It is readily apparent that an intent to sell the unstamped cigarettes *in this state* is an essential element of the crime charged and failure to submit this element was prejudicial error. For that reason, the conviction must be reversed and the case remanded for retrial.

Having so determined, we have concluded that several additional points which were briefed and argued should be addressed briefly as they are likely to arise again on retrial.

■ Several additional assignments of error are directed to Instruction No. 5. Defendant challenges its failure to define the terms "possessed for the purpose," "sale," "wholesaler" and "common carrier." He does not explain how "possessed for the purpose" could be further defined, nor is any such need apparent. "Sale" is a term which is specifically defined in § 149.011(8).[4] Although we agree with the state's contention that the failure to define this term actually may have been beneficial to the defendant in this instance, the definition provided is considerably different than the word's ordinary connotation and should be defined for the jury on retrial.

■ The state justifies the failure to define "wholesaler" or "common carrier" by asserting that a finding that defendant oc-

---

4. Sec. 149.011(8) provides:

"'Sale', in this instance is defined to be and declared to include sales, barters, exchanges and every other manner, method and form of transferring the ownership of personal property from one person to another, and is also

declared to be the possession of cigarettes for consumption, irrespective of how acquired; possession of cigarettes by any person other than a manufacturer, wholesaler or retailer shall be prima facie evidence of possession for consumption."

cupied either status is a special negative defense, similar to those referenced in the notes following MAI–CR 2.04. A special negative defense is one upon which the defendant does not carry the burden of proof. Submission is warranted where the defense is supported by enough evidence arising during the whole case to raise a reasonable doubt of defendant's guilt.

The state asserts that the only evidence in this case as to whether defendant was a wholesaler or common carrier was introduced by the prosecution and tended to show that defendant occupied neither status. Furthermore, on appeal, the defendant denies he has ever claimed such status. On this basis, the state reasons that it need not have submitted these negative defenses and that defendant could not have been prejudiced by the failure to define the challenged terms.

■ We hold that the exceptions of licensed wholesalers and common carriers from the prohibition of § 149.051.2 are intended to be special negative defenses. As such, they need only be submitted where the evidence justifies an inference of the existence of the defense which is sufficient to raise a reasonable doubt of the defendant's guilt. On retrial, applying the foregoing test, the trial court should determine whether the evidence as then presented requires the submission of such defenses to the jury. In that connection we should observe that it is irrelevant whether the evidence requiring submission is part of the state's case or the defendant's case or both.

The evidence of the whole case is to be considered. Furthermore, because the definitions of these terms in §§ 149.011(2) [5] and (12) [6] are somewhat different from the ordinary meanings which might be ascribed, we hold that where these terms are used in a submission under this statute they must be further defined. Since the evidence on retrial may differ from that at the prior trial, we do not undertake a discussion of whether the trial court should have submitted such defenses.

■ Defendant also challenges the sufficiency of the evidence in several respects. The first claimed deficiency is the state's failure to prove that the defendant ever sold even one cigarette. The crime charged under § 149.051.2 does not require a sale, only *possession* with the *intent* of sale within the state. In this regard defendant also makes reference to the provision of § 149.-051.3, wherein possession of unstamped cigarettes by persons not exempted is made prima facie evidence of possession with the intent of sale, but no further discussion is required in view of our determination that the evidence adduced at trial was sufficient to support a finding that the cigarettes in defendant's possession were intended for sale in Missouri without benefit of that presumption.[7]

■ Defendant further claims that his motion for acquittal should have been granted on the basis of the state's failure to prove that the items seized were cigarettes as defined in § 149.011(1).[8] The record be-

5. Sec. 149.011(2) provides:
  " 'Common carrier', any person, association, company, or corporation engaged in the business of operating, for public use, an agency for the transportation of persons or property within the state."

6. Sec. 149.011(12) provides:
  " 'Wholesaler', any person, firm or corporation organized and existing, or doing business, primarily to sell cigarettes to, and render service to retailers in the territory the person, firm or corporation chooses to serve; that purchases cigarettes directly from the manufacturer; that carries at all times at his or its principal place of business a representative stock of cigarettes for sale, and that comes into the possession of cigarettes for the purpose of selling them to retailers or to persons outside or with-

in the state who might resell or retail the cigarettes to consumers. This shall include any manufacturer, jobber, broker, agent or other person, whether or not enumerated in this chapter, who so sells or so distributes cigarettes."

7. We note, however, that legislative clarification of this provision is desirable in light of our construction of §§ 149.015.1 and 149.051.2, *supra*.

8. Sec. 149.011(1) provides:
  " 'Cigarette', an item manufactured of tobacco or any substitute therefor, wrapped in paper or any substitute therefor, weighing not to exceed three pounds per one thousand cigarettes and which is commonly classified, labeled or advertised as a cigarette."

fore us on this appeal does not justify a holding that the state failed to make a submissible case on this point. The items had already been described as "cigarettes" before the point at which defendant's counsel began objecting to such characterization and were so described by defendant's counsel himself on several occasions during trial. The cigarettes were introduced without objection and passed to the jury. The complaint on appeal apparently is addressed to the lack of any expert testimony as to weight and makeup of the items, yet the objections at trial were insufficient and untimely to properly preserve this point for review. We note that the state attempted unsuccessfully to reopen its case when the nature of the objection became clear and the opportunity for such evidence will be available on retrial. The lack of any further definition of "cigarettes" is not challenged in this appeal and we make no ruling on that point.

We turn now to defendant's claim that the search warrant should have been quashed and the evidence obtained by reason thereof suppressed for the reason that the affidavits supporting the search warrant contained no allegation that defendant was within the jurisdiction of the magistrate at the time the warrant issued. The affidavits in support of the warrant contain substantially all of the information summarized at the outset of this opinion. However, the information relating to the events prior to the evening of defendant's arrest appear in one style of type and the final 2–3 lines which relate that the defendant was observed entering the state and on arrival at the Ramada Inn in Cape Girardeau were obviously typed on a different typewriter. This variance in type was the subject of considerable testimony elicited by defendant's counsel at the hearing on the motion to suppress the evidence. One of the affiants estimated on cross-examination that the time of arrest was 9:30 or 9:45 p. m. The affidavit states that the defendant was first observed at 10:25 p. m. and the warrant states that it issued at 10:42 p. m.

Defendant reasons that this discrepancy indicates either that the affiant swore to an event which had not occurred or that the portion appearing in different type from the body was added sometime after the warrant issued. In either event, defendant concludes that the magistrate could not have had sufficient jurisdictional facts before him when the warrant issued and urges that the warrant must be held void.

This contention is not supported by the record. Although the affiants were initially confused about precise times, neither claimed that he could give more than an estimate without refreshing his recollection because more than eight months had elapsed since the arrest. When permitted to review notes taken at the time of arrest, both testified that the arrest took place after 11:00 p. m. and that the time of observation stated in the affidavits was correct. Both testified that the body of the affidavit had been prepared earlier in the day and the statements concerning observation of the defendant in Cape Girardeau that evening were added in the prosecutor's office just before the affidavits were signed, thus explaining the different type. Even with the confusion over precise times, the testimony as to the *sequence* of events never varied: body prepared, last minute additions, affidavits signed, warrant issued, evidence seized, and defendant arrested. The magistrate who issued the warrant also testified to the same effect with no confusion about times. We hold that the motions to quash and suppress were properly overruled.

Defendant's remaining assignments of error may not arise on retrial and need not be treated herein. The state now has notice of these objections and may modify its presentation as it deems necessary.

The judgment is reversed and the cause remanded for a new trial.

All concur.