**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Cecil George OGLE,
Defendant-Appellant.**

**No. 11790.**

Missouri Court of Appeals,
Southern District,
Division Two.

Dec. 29, 1981.

Robert R. Parrish, Joplin, for defendant-appellant.

John Ashcroft, Atty. Gen., Kristie Green, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

PER CURIAM:

A jury found the defendant guilty of the class B felony of rape by forcible compulsion. § 566.030.1(1) RSMo, 1978. The trial court found he was a persistent offender and sentenced him to imprisonment for 20 years. By his motion for a new trial and by his brief filed with this court, the defendant contends he is entitled to a new trial for the reason the trial court failed to give a mandatory MAI–CR2d instruction defining "serious physical injury".

The verdict directing instruction was MAI–CR2d 20.02.1. This instruction told the jury to find the defendant guilty if he was not married to the prosecutrix and had sexual intercourse with her without her consent "by the use of forcible compulsion". Note on Use 3 to MAI–CR2d 20.02.1 in part provides: "A separate instruction *must be given* defining the following terms, if used in any of the instructions, whether the definition is requested or not: 'forcible compulsion', '*serious physical injury*'. These terms are defined in MAI–CR2d 33.00—Definitions". (Emphasis Added).

The trial court did give an instruction defining forcible compulsion as: "(a) Physical force that overcomes reasonable resistance, or (b) A threat, expressed or implied, that places a person in reasonable fear of death, *serious physical injury* or kidnapping of himself or another person." (Emphasis Added). Contrary to the Note on Use referred to above, the trial court did not give an instruction defining "serious physical injury". This failure was "error, its prejudicial effect to be judicially determined". Crim.Rule 28.02(e). This determination requires a brief resume of the evidence.

On the January night in question the defendant and two friends escorted one Bonnow to a house where the prosecutrix lived with her year-old child. She was separated from her husband, although she was talking with him on the telephone at the time they arrived. The defendant and his companions were searching for some stolen stereos and apparently Bonnow had indicated the prosecutrix had some knowledge of their whereabouts. Bonnow had been roughed up. The prosecutrix denied such knowledge. When Bonnow got on the phone to discuss the stereos with the prosecutrix's husband, the defendant was further angered with Bonnow and kicked him. Bonnow escaped by jumping out a window. The other three men chased him without success. When they later returned to the

house the prosecutrix rode with them to the police station to file a complaint against Bonnow for breaking the window. She testified the complaint she intended to file would have been false. The police station in the small community was closed. The prosecutrix was taken home and the three men departed. The prosecutrix had left her son with her friend Miller. Miller was the brother of the prosecutrix's next door neighbor who was informed of the event and came to see if everything was all right. While Miller was there, a police officer came to the house and asked the prosecutrix if she had seen Ogle kick Bonnow. She falsely stated she had not. Later she and Miller drove to the home of a 19-year-old young man who had been "seeing" the prosecutrix for three months. They picked up this young man and his friend. They dropped off the friend and drove by a manufacturing plant where the prosecutrix worked and picked up some plywood to place over the window. After they returned to the prosecutrix's house, Miller soon left. The young man testified he had "boarded up the outside window" with quarter-inch plywood. The prosecutrix did not remember whether or not the window had been boarded up.

According to the prosecutrix, about this time the defendant returned. When she opened the door to him, he forced his way into the house. After putting his arms around her, he pushed her into the bedroom where he ordered her to disrobe. She did so only after he had hit her three times with an open hand and had drawn back his fist. She submitted because she was afraid. After intercourse, when the defendant was removing his shirt, the prosecutrix escaped by jumping through the same window through which Bonnow had made his exit. She ran through the snow to her neighbor's house and the police were called. The young man testified that when the defendant arrived he went into the kitchen, but from there saw the defendant push the prosecutrix into the bedroom and hit her. The young man said he left by the back door because he was not prepared to fight the defendant. While fleeing, the young man heard the cries of the prosecutrix, but he did not seek aid. The prosecutrix said the second blow split her upper lip. She had bruises on the inside of her thighs but she did not know if these were the result of actions by the defendant or from escaping. She had cuts and abrasions from escaping. A medical examination that night did not show the presence of sperm or a level of acid phosphate sufficient to establish recent sexual intercourse although such tests were not conclusive.

The defendant testified that on the trip from the police station the prosecutrix invited him back. When he returned, after a brief conversation, she led him into the bedroom where she willingly disrobed. As he was doing the same, a noise was heard on the adjoining front porch and the prosecutrix panicked, jumped out the window and ran next door to falsely accuse him of rape. The defendant emphasizes the improbability that he attacked the prosecutrix in the presence of the young man who had recently lettered in football and weighed 190 pounds. He asserts it is incredible that the young man fled and made no report of an assault. The defendant also points out inconsistent and impeaching statements made by the young man. He further emphasizes the prosecutrix's willingness to file a false report against Bonnow and the fact she lied to the police who came to her house between the first and second visit by the defendant.

With this background, it is to be determined if the error of the trial court must be deemed prejudicial. In making the determination, this court must adhere to established principles and follow the controlling decisions. Initially, it must be observed that this review is not limited to a determination of whether or not the omission of the trial court was "plain error" within the meaning of Crim.Rule 30.20. The defendant has properly preserved his claim of error. Compare *State v. Sanders*, 541 S.W.2d 530 (Mo. banc 1976) and *State v. Grant*, 560 S.W.2d 39 (Mo.App.1977).

■ The failure to define serious physical injury " 'must be deemed prejudicial unless the contrary clearly appears' ". *State v. Lasley*, 583 S.W.2d 511, 517 (Mo. banc 1979).

■■ It is fundamental the instructions "must cover ' " 'all the essential elements of an offense embraced within the charge' " ' ". *State v. Burgess*, 457 S.W.2d 680, 682 (Mo. banc 1970). Also see *State v. Mason*, 571 S.W.2d 246 (Mo. banc 1978). It has been observed "[t]here is one principle of law relative to verdict directing instructions in criminal cases so basic and fundamental that its violation irrevocably precludes a finding of harmless error—a verdict directing instruction must require a finding of all the constituent facts necessary to constitute an offense in order to support a conviction." *State v. Newhart*, 503 S.W.2d 62, 69 (Mo.App.1973).

■ Whether or not the instructions tell the jury what it must find, or what constitutes the offense charged, is to be determined by the meaning of the language, or words, used in those instructions.

■ If such instructions employ words of "common usage", no definition or amplification of such terms is required. *State v. Hammond*, 571 S.W.2d 114 (Mo. banc 1978); *State v. Abram*, 537 S.W.2d 408 (Mo. banc 1976). However, it is firmly established " 'where technical or other terms are used, and their meaning may not be comprehended readily by unprofessional persons, and it appears, from the whole case made, that the jury may possibly misapply them, they may or should be defined or explained in such a way as to give to the jury a correct idea of their meaning' ". *State v. Jackson*, 369 S.W.2d 199, 205 (Mo.1963). Also see *State v. Bruce*, 564 S.W.2d 898 (Mo. banc 1978); *State v. Vollmar*, 389 S.W.2d 20 (Mo.1965); *State v. Hurvey*, 544 S.W.2d 593 (Mo.App. 1976).

■ It has been declared that a synonym for rape, the term "ravish", is a term of common meaning. *State v. Hurvey*, supra. The same is true of "great bodily harm". *State v. Goodman*, 490 S.W.2d 86 (Mo.1973). However, the standard against which the instructions in this case must be measured, The Criminal Code, has redefined many offenses. Rape, as a synonym of ravish, now must be the result of "forcible compulsion". § 566.030.1(1).

■ Forcible compulsion is defined as either "(a) Physical force that overcomes reasonable resistance, or (b) A threat, express or implied, that places a person in reasonable fear of death, serious physical injury or kidnapping of himself or another person". § 556.061(11). As so defined the term forcible compulsion bears a meaning not "comprehended readily by unprofessional persons" and the jury should have been and was instructed as to that meaning. *State v. Jackson*, supra, at p. 205.

■ If not otherwise defined by statute, the term "serious physical injury" might be said to bear a common meaning. Compare *State v. Goodman*, supra. However, that term by statute is defined as: "[p]hysical injury that creates a substantial risk of death or that causes serious permanent disfigurement or protracted loss or impairment of the function of any bodily member or organ". § 556.061(24). Certainly the statutory definition of that term is somewhat different than the ordinary meaning which might be ascribed to them. Since that term was used in the submission of the offense it should have been further defined. *State v. Bruce*, supra.

■ The jury returned a general verdict of guilty. It cannot be determined whether the jury found the intercourse was accomplished by physical force that overcame reasonable resistance or by reasonable fear of serious bodily injury. On this review this court must consider the case as if the jury determined it was accomplished by reasonable fear of serious bodily injury. *State v. Vollmar*, supra; *State v. Dougherty*, 358 Mo. 734, 216 S.W.2d 467 (1949). Yet the jury was not informed of the statutory meaning of the term serious physical injury. It is no answer to say that by the verdict of guilty the jury rejected the testimony of the defendant and accepted that of the prosecutrix. The jury was not instructed

that as a prerequisite to a verdict of guilty it had to find the prosecutrix was placed in reasonable fear of physical injury that creates a substantial risk of death or causes serious permanent disfigurement or protracted loss or impairment of functions of any bodily member or organ.[1] Under the record in this case, this court cannot say the jury would have so determined had they been so instructed or that the verdict of guilty was tantamount to such a determination.[2] "But the broader ground for rejecting the State's contention is that in Missouri appellate courts do not reason deductively from the jury's verdict back to their actual intention, where they may have been adversely influenced by an erroneous instruction or by the lack of an instruction required by the statute." *State v. Aitkens*, 352 Mo. 746, 179 S.W.2d 84, 94 (1944).

There was substantial evidence from which the jury could have made the required determination. However, because of the failure to give the mandatory instruction, the jury was not informed of the elements of rape by forcible compulsion. For that reason this court must reverse the judgment and remand the case for a new trial. It is so ordered.

All concur.

---

1. For the proof necessary to establish a person had a reasonable belief he is about to suffer great bodily harm see *State v. Jackson*, 511 S.W.2d 771 (Mo.1974). Compare the presumption of fear in *State v. Hawkins*, 418 S.W.2d 921 (Mo. banc 1967).

2. Compare *State v. Barber*, 587 S.W.2d 325 (Mo.App.1979); *State v. Sheets*, 468 S.W.2d 640 (Mo.1971). Also compare cases where a fact has been established without question, *State v. McCauley*, 522 S.W.2d 152 (Mo.App. 1975); *State v. Cardwell*, 312 Mo. 140, 279 S.W. 99 (1926); *State v. Brickey*, 348 Mo. 248, 152 S.W.2d 1055 (1941). Or, where a fact is not in issue, *State v. Fitzgerald*, 174 S.W.2d 211 (Mo.1943).