STATE of Missouri, Respondent,

v.

Burt A. RODGERS, a/k/a James Craigs, Appellant.

No. 63274.

Supreme Court of Missouri,
En Banc.

Nov. 9, 1982.

Lauren Weisfeld, Asst. Public Defender, Clayton, for appellant.

John Ashcroft, Atty. Gen., Rosalynn Van Heist, Asst. Atty. Gen., Jefferson City, for respondent.

HIGGINS, Judge.

Burt A. Rodgers was convicted of first degree burglary, section 569.160 RSMo 1978; rape, section 566.030 RSMo; false imprisonment, section 565.130 RSMo; and first degree robbery, section 569.020 RSMo. The jury fixed punishment at thirty years

imprisonment for rape, thirty years for first degree robbery, fifteen years for first degree burglary, and one year, nine months, for false imprisonment. The court found defendant a dangerous offender pursuant to section 558.016 RSMo, and sentenced him to consecutive terms of life imprisonment for first degree robbery; life imprisonment for rape; thirty years for burglary; and one year, nine months, for false imprisonment. Judgment was rendered accordingly. Appellant offers no challenge to the robbery conviction or the extended punishments. He charges the trial court erred by failing to define specific terms in the verdict directing instructions on rape, false imprisonment and burglary as required by MAI–CR 2d; in overruling a motion for disclosure of grand jury data; by proceeding with trial when the jury had been unconstitutionally selected; by admitting improper evidence; and in refusing questions on voir dire designed to detect potential racial prejudice of veniremen. Affirmed in part and reversed and remanded in part.

In the early morning hours of June 18, 1980, defendant, Jerry Bell and three others were stealing gasoline from a car in Bellefontaine Neighbors. While siphoning the gas, Bell noticed the door of a nearby house was ajar and the lights were on. Defendant and Bell circled the house looking in windows and the door. They saw an older man, John Canavan, sitting in a chair in the living room. Both men returned to their car, got jack handles and instructed defendant's girl friend to drive down the street. Defendant and Bell returned to the Canavan house, pushed the door open and entered. Bell confronted John Canavan, pushed him onto a chair and demanded money. In response, Mr. Canavan led Bell to a back bedroom and gave him some money.

Mary Canavan, John's seventy-four year old sister, had been sleeping when defendant and Bell confronted her brother. She was awakened by the commotion and went to the living room. When she saw the two strangers she ran to the back bedroom to phone police. The defendant grabbed Mary, slapped her, and tore the phone out of the wall. He then took money from Mary's purse and left the room; Mary followed. Defendant turned, pushed Mary into a bedroom and threw her on the bed, breaking her wrist. He tore her nightgown off, threw her to the floor causing her to hit her head, and raped her. Mary had resisted the assault by trying to keep her legs together; defendant choked her until she submitted. After the attack, defendant took Mary to the living room where she and John were tied up with John's neckties. Defendant and Bell ransacked the house, tearing phones from the walls, and taking jewelry, televisions, and other valuables. They left in the Canavan's automobile.

Mary Canavan freed herself and called police after releasing her brother. The victims were taken to a hospital where Mary was treated for a broken wrist and rape.

Defendant and Bell were arrested some time later. Bell entered into a plea bargain and agreed to testify against defendant. Before trial, defendant moved unsuccessfully for discovery of names, addresses, and occupations of persons on the master grand jury list.

The problem in this case is the trial court's failure to define "forcible compulsion," "serious bodily injury" and "inhabitable structure" in the verdict directing instructions on false imprisonment, rape and burglary under MAI–CR 2d 19.24, 20.02.1 and 23.50. The applicable Note on Use in each instruction requires a separate instruction defining these terms if they are used in any instruction. The trial court failed to give these required instructions and thereby committed error. *State v. Ogle,* 627 S.W.2d 73, 74 (Mo.App.1981); Sup.Ct.R. 28.02(e). The prejudicial effect of this error must be judicially determined. Sup.Ct.R. 28.02(e).

The failure to define serious physical injury, forcible compulsion and inhabitable structure must be deemed prejudicial unless a contrary effect is shown. *See State v. Lasly,* 583 S.W.2d 511, 517 (Mo. banc 1979); *Ogle,* 627 S.W.2d at 76; *State v. Johnson,* 537 S.W.2d 816, 819 (Mo.App. 1976). Verdict directing instructions must

contain each element of the offense charged and require "a finding of all the constituent facts necessary to constitute an offense in order to support a conviction." *State v. Newhart,* 503 S.W.2d 62, 69 (Mo.App.1973). Whether the instructions include these necessary elements must be determined by the language used in the instruction. *Ogle,* 627 S.W.2d at 76. Failure to define words of common usage which would not confuse the jury does not constitute prejudice. *See State v. Abram,* 537 S.W.2d 408, 411 (Mo. banc 1976). Technical terms which may be misapplied by the jury must be " 'defined or explained in such a way as to give to the jury a correct idea of their meaning.' " *State v. Jackson,* 369 S.W.2d 199, 205 (Mo. 1963). Prejudicial error will occur where the jury "may have been adversely influenced by an erroneous instruction or by the lack of an instruction required by the statute." *State v. Aitkens,* 352 Mo. 746, 762, 179 S.W.2d 84, 94 (1944).

The three terms appellant claims should have been defined encompass meanings which jurors would not readily comprehend as they apply in the context of these charges. Forcible compulsion is defined as either "(a) Physical force that overcomes reasonable resistance, or (b) A threat, express or implied, that places a person in reasonable fear of death, serious physical injury or kidnapping of himself or another person." § 556.061(11) RSMo. An inhabitable structure

> ... includes a ship, trailer, sleeping car, airplane, or other vehicle or structure:
>
> (a) Where any person lives or carries on business or other calling; or
>
> (b) Where people assemble for purposes of business, government, education, religion, entertainment or public transportation; or
>
> (c) Which is used for overnight accommodation of persons. Any such vehicle or structure is "inhabitable" regardless of whether a person is actually present; ...

*Id.* § 569.010. Serious physical injury is defined as "[p]hysical injury that creates a substantial risk of death or that causes serious permanent disfigurement or protracted loss or impairment of the function of any bodily member or organ." *Id.* § 556.-061(24).

■ The jury found that defendant had raped Mary Canavan and inflicted serious physical injury on her; yet the jury had not been informed of the statutory meaning of serious physical injury. The definition requires the jury find either risk of death, serious permanent disfigurement, or protracted loss or impairment of function. The ordinary person would not give the term serious physical injury the meaning accorded it by statute. It may well be the jury found something less than that required by statute in finding the defendant had inflicted serious physical injury on Mary Canavan. While evidence in the record may support the verdict, it cannot be said that the jury would have so found had they been fully instructed. This error adversely affected the jury's findings.

■ Similarly, failure to define forcible compulsion in the instruction on false imprisonment constituted prejudicial error. It cannot be determined whether the jury found the Canavans had been restrained by either physical force that overcame reasonable resistance, or by an express or implied threat placing them in fear of death, serious physical injury, or kidnapping. Again, the record may support a jury finding of forcible compulsion, but the Court cannot speculate as to the jury's finding had it been properly instructed.

■ Failure to define inhabitable structure does not present error prejudicial to the defendant. Though the term encompasses some meaning not readily understood by jurors, it would be absurd to say the jury was adversely influenced by the failure to define inhabitable structure in this case. The deviation between the statutory definition of inhabitable structure and the common meaning of the term is not as great as the deviation between the definitions of forcible compulsion and serious physical injury and their common meanings. The failure to define inhabitable structure was error; it did not constitute prejudicial error in this case. Sup.Ct.R. 28.02(e).

The evidence adduced at trial could have supported jury findings of serious physical injury and forcible compulsion. Because of the failure to define these terms as required by MAI–CR 2d, the jury was not informed of the elements of rape by forcible compulsion or false imprisonment. Therefore, defendant's convictions of false imprisonment and rape must be reversed and the cause remanded for a new trial on those charges.

■ It is not necessary to address appellant's remaining points except to note his charge of error in overruling defendant's motion for data contained on the master grand jury list. The motion requested the names, addresses, and occupations of the persons appearing on that list. The ruling was proper under *State ex rel. Garret v. Saitz*, 594 S.W.2d 606 (Mo. banc 1980), where this Court held demographic information must be made available to the relator "excepting the names, addresses, and occupations of those listed." *Id.* at 608.

The judgment as to the convictions for robbery and burglary is affirmed. The judgment as to the convictions for rape and false imprisonment is reversed, and the cause is remanded for new trial on those charges.

DONNELLY, C.J., RENDLEN, SEILER, WELLIVER and GUNN, JJ., and DOWD, Special Judge, concur.

BILLINGS, J., not participating because not a member of the Court when cause was submitted.