898

**STATE of Missouri,**
**Plaintiff-Respondent,**

v.

**Billy Jay PEARSON,**
**Defendant-Appellant.**

**No. 12676.**

Missouri Court of Appeals,
Southern District,
Division Two.

Feb. 14, 1983.

Motion for Rehearing and to Transfer to
Supreme Court Denied March 2, 1983.

Application to Transfer Denied
April 26, 1983.

Robert E. Almirall, Springfield, for defendant-appellant.

John Ashcroft, Atty. Gen., Kristie Green, Asst. Atty. Gen., Jefferson City, Philip M. Koppe, Asst. Atty. Gen., Kansas City, for plaintiff-respondent.

MAUS, Presiding Judge.

A jury found the defendant guilty of one count of kidnapping (§ 565.110), two counts of deviate sexual intercourse (§ 566.060) and one count of rape by forcible compulsion. (§ 566.030.1). He was sentenced to a term of imprisonment for 10 years upon each count, to run consecutively. He does not question the sufficiency of the evidence. His appointed counsel on appeal has with skill and refreshing candor presented three points of instructional error. Two of these points are based upon failure of the trial court to give an instruction defining "serious physical injury," a term included in the definition of "forcible compulsion," an element of each of the offenses. The points of error require a synopsis of the evidence.

The prosecutrix was 18 years old at the time of the offense, approximately 5 feet tall and weighed 115 pounds. She was married, but separated from her husband three weeks earlier. She was living with her mother. Her testimony of the salient events is as follows.

She spent the evening in question riding around with a young woman who was her former classmate and best friend. During the course of the evening, they shared a bottle of wine. Shortly after midnight,

they went to an apartment complex for the classmate to visit her 16 year old boyfriend who lived there with his mother. As they were awaiting admittance, the defendant entered and knocked at apartment B across the hall. A short time after she and her classmate had been admitted, the prosecutrix left because the classmate and her boyfriend began to quarrel. The prosecutrix intended to wait in the car. On her way to the car, she was accosted by the defendant. The defendant was 48 years old and weighed approximately 175 pounds. After the prosecutrix refused his invitation, he attempted to drag or pull her to his pickup truck. When that was unsuccessful, the defendant produced a .38 caliber revolver. As the prosecutrix put it, "he put the gun up to my neck and he told me to get in, or he'd blow my brains out." She got in "because I was scared to death."

The defendant drove to a nearby motel where he expected a friend of his to be on duty. During the trip the defendant told the prosecutrix if she tried to get out he would kill her. She believed him. The motel office was closed. In the truck she was ordered, "get 'em off, or I'll kill you." She complied and he forced her to perform an act of sodomy. The defendant then drove to another motel where a friend of his was on duty. He did not register but obtained a key to a second floor room. The prosecutrix accounted for her failure to flee by the defendant's threat to kill her if she tried to get away, the distance to a public thoroughfare, her indecisiveness about where to run at that late hour and the defendant's swift return. The defendant then forced the prosecutrix into the room where he accomplished alternate acts of sexual intercourse and deviate sexual intercourse. During the trip in the pickup truck and in the motel room, the defendant kept the .38 caliber revolver within reach. In the room, he also beat her with a belt. As a result of a telephone report, the police commenced looking for the defendant. His pickup truck was seen at the motel. The officers gained admittance to the room where they found the defendant and the victim. The .38 caliber revolver was found under the mattress.

The prosecutrix's testimony was corroborated by her former classmate. Following the incident, the prosecutrix was badly bruised. When freed from the motel room, she became hysterical. She promptly stated to the officers she was abducted at gunpoint. This was corroborated by the defendant's admissions to the police officers that he was in trouble because of what may be decorously called his uncontrollable rutting instincts.

The defendant's version, which was in total contrast to that of the prosecutrix, is summarized as follows. He was living with a 33-year-old woman named Connie. The morning of the day in question, he attended to a business transaction and then went to a bar. He first drank coffee, followed by about three beers. In response to a phone call, he returned to Connie's where he had lunch and sex. He then repaired to the Locker Room where, shot by shot, washed down by beer, he drank about a quart of tequila. Late in the afternoon he went to Howard Johnson's where he had a few beers with friends. He then drove across the city to Connie's. Finding she was gone, he returned to the Locker Room. He ordered a beer and a shot of tequila. When he was told Connie left with two men, he took his beer, and as he put it, "staggered off, down to Wild Bill's." There the manageress suggested he go to a table where the prosecutrix, her classmate and an older woman in her 30's were seated. They drank and danced. He switched to Black Jack and seven. The two younger women said they were going to a party. He asked to join them and was permitted to do so. He followed in his pickup truck as they drove to an apartment that was unfamiliar to him. He accompanied the prosecutrix and her classmate to apartment A. The classmate's boyfriend opened the door and asked them "where they got the old dude at?" About that time, the door to apartment B across the hall opened. To the defendant's complete surprise, there was Rebecca, Connie's younger sister.

The defendant entered apartment B and got into an argument with Rebecca. He

left about the time the prosecutrix was leaving the other apartment. She asked to go with him. He drove to a liquor store, but when he found he could not walk to the door, bought no more whiskey. He drove to the Trail's End Motel which was closed. They sat in his truck and talked. While he was drinking a beer, she told him her husband had "beat her that day and chased her around with a gun." She displayed to him a gun which he took from her and put in a cigar box.

He then told her he had to go to another motel to sleep it off. He said he would take her where ever she wanted to go, but "it would please me if she went with me." They did get a room. After they had occupied the room he discovered her gun on the night stand. He took it and threw it under the mattress. At her instigation they tried several times to have sexual intercourse but he was incapable. He said that for several years he had been impotent when he had more than a moderate amount of beer to drink. He had dozed off when the officers arrived. He denied the prosecutrix became hysterical.

The defendant called Cora Hood. When the defendant dropped by her home to see the man she was living with, she and the defendant talked about the pending charges. She recognized a picture of the prosecutrix displayed to her by the defendant. Ms. Hood testified she frequently saw the prosecutrix at Wild Bill's.

Connie generally corroborated the defendant's testimony. She last saw the defendant about 10:00 p.m. Then, "she had to call Bob Brinkley to come up and see if he could find B.J." Brinkley, a friend of the defendant, lived at Marshfield. He too identified the picture of the prosecutrix. He said upon receiving the call he drove directly to Springfield to hunt for the defendant. After a tour, about midnight, he saw the defendant's pickup at Wild Bill's. In the parking lot, he met the defendant and the prosecutrix and another young lady. He was unable to persuade the defendant to go home.

The defendant called Rebecca, apparently to corroborate his testimony. However, that testimony did not do so. Rebecca testified the defendant came to apartment B, drunk, looking for and mad at Connie. She saw something sticking in his waistband, but she didn't know if it was a handgun, as she had never seen a handgun. She admitted that she called the police and told them that the defendant had said something like, "I'm going to shoot the shit out of her and this whole God-damned town." Burris Gibson, the tenant of apartment B, testified he saw the defendant leave and that a girl, apparently voluntarily, got in his truck with him. He denied he told an officer he saw the defendant, by the use of a gun, force the prosecutrix into his truck.

In rebuttal, the prosecutrix's former husband testified that from March 10 or 11, 1981, until April 10, 1981, he was in California visiting his parents. The incident in question occurred the night of March 28, 1981. A police officer confirmed the fact that Rebecca clearly told him the defendant had a gun. Another officer testified that Gibson had reported that he saw the defendant grab a young girl and force her into his pickup truck. From the record, it is apparent the police's search for the defendant stemmed from this observation.

By Instructions No. 7 and 9, the court submitted the two counts of sodomy. Each was drawn from MAI–CR2d 20.08.1. By Instruction No. 11, the court submitted the count of rape. This instruction was drawn from MAI–CR2d 20.02.1. Each of the instructions given required the jury to find the defendant accomplished the sexual act "without her consent by the use of forcible compulsion." Forcible compulsion is defined as "either (a) Physical force that overcomes reasonable resistance, or (b) A threat, express or implied, that places a person in reasonable fear of death, serious physical injury or kidnapping of himself or another person." § 556.061(11). Serious physical injury, a term used in the definition of forcible compulsion, is defined as "physical injury that creates a substantial risk of death or that causes serious permanent disfigurement or protracted loss or

impairment of the function of any bodily member or organ." § 556.061(24).

■ The Notes on Use to both of the MAI–CR2d instructions referred to above require that instructions be given defining the terms "forcible compulsion" and "serious physical injury" whether requested or not. The court gave an instruction defining "forcible compulsion." No instruction was given defining "serious physical injury." The failure to do so was error, the prejudicial effect of that error to be judicially determined. Rule 28.02(e); *State v. Rodgers,* 641 S.W.2d 83 (Mo. banc 1982); *State v. Ogle,* 627 S.W.2d 73 (Mo.App.1981). A conviction of rape was involved in both *Rodgers* and *Ogle.* In each it was observed that "[t]he ordinary person would not give the term serious physical injury the meaning accorded it by statute." *State v. Rodgers,* supra, at p. 85. In each of those cases it was held the defendant was prejudiced by failure of the court to define serious physical injury.

However, the evidence in those cases concerning the means by which the sexual act was accomplished is vastly different from such evidence in this case. In *Ogle,* the prosecutrix's evidence was that the defendant hit her with an open hand three times and drew back his fist. In *Rodgers,* there was no showing of the extent to which the defendant choked the victim before she submitted. It should be noted that in *Rodgers,* the court failed to define both forcible compulsion and serious physical injury. In neither case was there evidence of a threat of death. In those cases, even though the testimony of the prosecutrix was accepted, the violence involved was such the jury may have found something less than a threat of serious physical injury, as that term is peculiarly defined by statute. Therefore, under those circumstances, when that term was not defined, it could not be said the defendant was not prejudiced.

In this case the term forcible compulsion was defined. That definition includes a reasonable fear of death. It is true as the defendant emphasizes, the prosecutrix was asked if she submitted because she feared death or serious physical injury and she responded, "Yes." But, in contrast to *Rodgers* and *Ogle,* the only evidence of violence before the prohibited acts was that of threats of death from a drunken, 48-year-old man wielding a loaded .38 caliber revolver. The prosecutrix testified that initially he put the gun to her throat and threatened to blow her brains out. On two subsequent occasions, he threatened her with death. He kept the gun at hand. It is not coincidence that she said she was scared to death.

The other evidence concerning the prohibited acts was that of the defendant. His version was that the prosecutrix had the gun, was the aggressor in attempting sexual acts, but that he couldn't perform. "This was a case where the jury could believe either the state's evidence or defendant's but not both." *State v. Gibson,* 633 S.W.2d 101, 105 (Mo.App.1982). Also see *State v. Graves,* 588 S.W.2d 495 (Mo. banc 1979); *State v. Barber,* 587 S.W.2d 325 (Mo.App. 1979). It is difficult to see how the jury may have been adversely influenced by the failure to define serious physical injury when there was no evidence of a threat of such injury. Under these circumstances, the failure to define serious physical injury could be held not to be prejudicial within the meaning of Rule 28.02(e). *State v. Graves,* supra.

■ Further, in *Rodgers* and *Ogle,* each defendant preserved the instructional error by his motion for a new trial. In this case the defendant did not preserve any instructional error. The point can be considered only under the plain error doctrine. *State v. Sanders,* 541 S.W.2d 530 (Mo. banc 1976). There is "no plain error unless the trial court has so misdirected or failed to instruct the jury on the law of the case as to cause manifest injustice." *State v. Dighera,* 617 S.W.2d 524, 534 (Mo.App.1981). Failure to define similar terms has consistently been held not to constitute plain error. *State v. Dighera,* supra; *State v. Cass,* 614 S.W.2d 784 (Mo.App.1981). As clearly demonstrated by the evidence recited above, the failure to define serious physical injury did not

result in manifest injustice. It is certainly not plain error. *State v. Sanders,* supra; *State v. Ellifrits,* 459 S.W.2d 293 (Mo. banc 1970); *State v. Cass,* supra; *State v. Miller,* 604 S.W.2d 702 (Mo.App.1980).

The defendant's second point is in substance the same as his first point except it concerns the instruction submitting kidnapping. This instruction was drawn from MAI–CR2d 19.20. The kidnapping instruction also uses the term forcible compulsion. However, while the Notes on Use require a definition of forcible compulsion, nothing is said therein about a definition of serious physical injury. Nevertheless, the defendant says because of the nature of the term serious physical injury, the failure to define that term constituted plain error. What has been said before is applicable to this point and it is denied.

■ Lastly, the defendant contends that third degree sexual abuse (§ 566.120) is a lesser included offense of the sodomy charged in this case. (§ 566.060.1(1)). He asserts the trial court committed plain error in not instructing on third degree sexual abuse. The definitions of the two offenses are difficult of construction and reconciliation. However, it has been held that third degree sexual abuse is not such a lesser included offense. *State v. Shannon,* 637 S.W.2d 393 (Mo.App.1982). Those interested in the complexities of the problems arising from the interrelationship of the statutes defining sexual offenses may consult *State v. Harris,* 620 S.W.2d 349 (Mo. banc 1981); *State v. Gibson,* supra; *State v. Brydon,* 626 S.W.2d 443 (Mo.App.1981). If third degree sexual abuse is an additional or alternative offense, the choice of the charge was within the discretion of the prosecutor. *State v. Gibson,* supra. If, in fact, third degree sexual abuse was a lesser included offense, the evidence does not permit an instruction submitting the same. "The court shall not be obligated to charge the jury with respect to an included offense unless there is a basis for a verdict acquitting the defendant of the offense charged and convicting him of the included offense." § 556.046.2. The evidence does not establish such a basis. *State v. Olson,* 636 S.W.2d 318 (Mo. banc 1982). The judgment is affirmed.

HOGAN and PREWITT, JJ., concur.