**STATE of Missouri,
Plaintiff-Respondent,**

v.

**William Leslie (Bill) MUDD,
Defendant-Appellant.**

**No. 14073.**

Missouri Court of Appeals,
Southern District,
Division One.

Dec. 16, 1985.

Motion for Rehearing or to Transfer to Supreme Court Denied Jan. 7, 1986.

Application to Transfer Denied
Feb. 18, 1986.

William L. Webster, Atty. Gen., John M. Morris, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Kathleen Markie, Columbia, for defendant-appellant.

GREENE, Judge.

Defendant, William Leslie (Bill) Mudd, was found guilty by a jury of one count of kidnapping and five counts of sodomy. He was then court-sentenced, after a finding that he was a prior and persistent offender by reason of two prior felony convictions, to 30 years' imprisonment on each count, with the sentences to run consecutively, for a total of 180 years' confinement.

The sufficiency of the evidence to sustain the convictions is not questioned on appeal. It suffices to say that at approximately 10:30 p.m., on June 20, 1984, T.C.W., an 18 year old male, was walking along Highway 71, when a pickup truck stopped and its occupants offered him a ride to Joplin. Mudd was driving the truck, and was accompanied by his live-in homosexual lover,

Kahle Edward Fletcher. Instead of driving to Joplin, Mudd drove to an isolated country road where T.C.W., after being stripped of his clothing, was forced to perform oral sodomy on both Mudd and Fletcher. Mudd then chauffeured the trio to a rural house where he and Fletcher lived. T.C.W. was blindfolded and his hands and feet were bound with duct tape, after which he was subjected to multiple acts of oral and anal sodomy by Mudd and Fletcher through the course of the night and the following day, the details of which are so revolting and disgusting as to defy description.

After approximately 20 hours of confinement by Mudd and Fletcher, T.C.W. escaped. He notified the authorities, and related to them what had happened during his hours of horror. Mudd and Fletcher were then arrested. Articles found in the house occupied by the duo, such as the duct tape used to restrain T.C.W., when subjected to scientific analysis, corroborated the youth's account of the ordeal.

Mudd did not testify at trial. Fletcher, testifying as a defense witness, stated that he and Mudd were homosexual lovers and had lived together for approximately 15 years. He admitted that he and Mudd had given T.C.W. a ride on the evening in question, that T.C.W. had been taken to the house where he and Mudd lived, that the boy had been bound and blindfolded, and that T.C.W. was subjected to oral and anal intercourse. His defense for this perverted sexual activity was that T.C.W. consented to the acts because "... that's the way he had sex with other people before." The jury rejected his explanation.

Mudd's first contention on appeal is that the trial court erred by admitting into evidence, over objection, the testimony of Robert Hance, a prior victim of sexual abuse by Mudd and Fletcher. Hance testified that on July 4, 1981,[1] Mudd and Fletcher, by use of force, and without his consent, made a deviate sexual assault on him. Mudd argues that such testimony constitut-

ed evidence of an unrelated crime and, therefore, its admission into evidence was prejudicial error.

■ The test for admissibility of unrelated crimes evidence to establish motive, intent, absence of mistake or accident, common scheme or plan, or identity of person charged is whether it reasonably tends to establish a material fact in issue in the case being tried. *State v. Smith*, 694 S.W.2d 901, 902 (Mo.App.1985). If the evidence is relevant, it is not to be rejected merely because it incidentally proves the defendant guilty of another crime. *State v. Knighton*, 518 S.W.2d 674, 679 (Mo.App. 1975).

■ Our review of the record convinces us that the testimony of Hance legitimately established the common scheme or plan exception to the general rule that evidence of uncharged crimes is inadmissible, as it proved that on another occasion Mudd had committed another crime so nearly identical in method as to earmark it as his handiwork. *See generally* McCormick on Evidence, § 190 at 449–450 (2d Ed.1972). Points of similarity in the assaults on Hance and T.C.W. were as follows:

(1) Hance's encounter with Mudd and Fletcher originated at a Joplin bar called "Wild Bill's." Mudd and Fletcher talked to T.C.W. about going to "Billy's bar."

(2) Hance and T.C.W. both saw Mudd play a guitar.

(3) Both victims were taken to a dark country road in the same general area where they were sodomized.

(4) Both victims were bound with duct tape.

(5) Both victims had a hard object inserted in their rectums by their assailants.

(6) Both victims had their clothing forcibly removed by Mudd and Fletcher.

(7) Both victims were urinated on by their assailants after the sexual attacks.

---

1. Hance had refused to press charges after his ordeal with Mudd and Fletcher because he was acquainted with them and was told that they would kill him if he reported the incident to the authorities. Hance was subpoenaed to testify at T.C.W.'s trial.

(8) Both victims were threatened with death if they did not submit.

The methodology in the attacks on Hance and T.C.W. was unusual, distinctive, and similar to such an extent as to earmark the assaults as the handiwork of Mudd and Fletcher. *See State v. McDaniels*, 668 S.W.2d 230, 233 (Mo.App.1984), and *State v. Young*, 661 S.W.2d 637, 639 (Mo.App. 1983). The circumstances in the two cases established the nonconsensual nature of the acts and Mudd's motive, intent, and modus operandi in sexually assaulting his victims. The point is denied.

In his second point relied on, Mudd asserts that T.C.W. testified about fourteen acts of deviate sexual intercourse performed upon him through force and without his consent, ten of which were performed by Mudd and four of which were performed by Fletcher with Mudd's assistance. Mudd contends that since Instructions 7, 8, 9, 10 and 11, which were sodomy verdict directors, only charged five separate acts of deviate sexual intercourse, the jury was given a roving commission to determine which five of the fourteen acts were committed, he was forced to defend against all fourteen allegations of sexual abuse made by T.C.W., rather than the five charged in the information.

■ This complaint was not raised by specific objection at time of trial, nor in defendant's motion for new trial. Therefore, this allegation has not been preserved for appellate review. Plain error review as requested by Mudd is not justified as we fail to see where the trial court so misdirected or failed to instruct the jury as to cause manifest injustice. *State v. Pearson*, 647 S.W.2d 898, 901 (Mo.App.1983). Four of the criticized instructions required a finding that Mudd, on or about June 20, 1984, had nonconsensual deviate sexual intercourse with T.C.W. by the use of forcible compulsion, while the fifth charged that Fletcher did so while being aided and abetted by Mudd. The instructions referred to the specific counts in the information to which they respectively applied.

■ Before trial, the state provided Mudd with a bill of particulars as to where, when, and how he committed the sodomies charged in the five separate counts in the information. Those sodomies were also detailed by T.C.W. in his testimony. Mudd knew the specific acts with which he was charged. In addition, the verdict directing instructions exactly followed the format prescribed in MAI-CR2d 20.08.1, which is the mandated instruction to use in deviate sexual intercourse cases. The term, deviate sexual intercourse, was defined in Instruction No. 13, which is MAI-CR2d 33.01. Instruction No. 16, which is MAI-CR2d 2.70, required the jury to consider each charge separately. Rule 28.02(c)[2] requires that whenever there is a MAI-CR verdict directing instruction applicable under the facts, it shall be given to the exclusion of any other on the same subject. The purpose of this rule is to submit only the ultimate issue to the jury. In *State v. Trimble*, 654 S.W.2d 245, 259 (Mo.App. 1983), this court rejected the contention that additional facts should have been inserted in the verdict directing instructions in a multiple count deviate sexual intercourse case. We find no error, plain or otherwise, in the questioned instructions.

■ In his final point relied on, Mudd argues that his conviction on both Counts IV and V of the information constituted double jeopardy "in that the two sodomy convictions arose out of the same incident involving the same victim and constituted only one offense."

This argument is ludicrous. The bill of particulars regarding Count IV stated the deviate sexual intercourse occurred at Mudd's residence and consisted of Mudd inserting his penis into the anus of T.C.W. As to Count V, the bill of particulars stated that after the anal intercourse mentioned in Count IV was completed, Mudd inserted his penis into T.C.W.'s mouth. The two separate and distinct acts of sodomy involved different parts of the victim's anatomy and

**2.** Missouri Rules of Court, V.A.M.R.

were of sufficient individual identity to support Mudd's convictions for two separate acts of sodomy. The fact that the two offenses occurred at the same location within a relatively short period of time does not prevent conviction of both offenses. *State v. Olson*, 636 S.W.2d 318, 320 (Mo. banc 1982); *State v. Davis*, 624 S.W.2d 72, 77 (Mo.App.1981). The point has no merit.

Judgment affirmed.

TITUS, P.J., and FLANIGAN, J., concur.