**STATE of Missouri, Plaintiff-Respondent,**

v.

**Angela FRANKS, Defendant-Appellant.**

**No. 44290.**

Missouri Court of Appeals, Eastern District, Division Two.

Dec. 7, 1982.

---

Daniel V. O'Brien, St. Louis, for defendant-appellant.

John Ashcroft, Atty. Gen., Melinda A. Corbin, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

SNYDER, Presiding Judge.

A jury found Angela Franks guilty of conspiracy to commit capital murder in violation of § 564.016 RSMo.1978. She appeals from the judgment of the circuit court of St. Louis County entered pursuant to the jury verdict and a sentence of fifteen years imprisonment. The cause is reversed and remanded because of an error in the giving of an instruction which defined "conspiracy" and "capital murder."

In addition to her point relied on concerning the erroneous instruction, appellant charges the trial court also erred: 1) in allowing the introduction of evidence pertaining to the death of one Reginald McGlorn because there was no substantial evidence linking the death with appellant; 2) in denying appellant's motions for judgment of acquittal; 3) in failing to declare a mistrial because of remarks made by the prosecutor in closing argument; and 4) in permitting the state to draw a negative inference from appellant's failure to call a witness.

Appellant was an insurance agent for the John Hancock Mutual Life Insurance Company (John Hancock). Her duties included selling life insurance policies, called debit policies, to less affluent persons for relatively small monthly premiums.

In October of 1975 appellant attended a party at the apartment of a friend Carolyn Henton nee Bailey. Appellant said she saw Onzell Williams there and sold him a life insurance policy. Williams, however, denied ever attending a party at Henton's and denied purchasing a life insurance policy from appellant. He also denied that he filled out or signed any of the following forms relating to the alleged insurance policy: the initial insurance application, an application for reinstatement after the policy had lapsed, or the change in beneficiary form. Mr. William's address, occupation and birthday were incorrectly shown on the insurance application. Mr. Williams also denied that he ever received a premium book from appellant.

The beneficiary of the insurance policy on Williams' life was at first Williams' wife. The beneficiary indicated on the change of beneficiary form, Carolyn Henton, was known to Mr. Williams only as Carolyn Bailey. Appellant testified that Williams requested the change of beneficiary, but Williams denied it.

Appellant testified that Williams paid his premiums in cash, occasionally falling into arrears. When the premiums were late, appellant would credit his account and then seek payment from Williams. Appellant said her supervisor gave her permission to credit Williams' and others' accounts although payment of the premiums had not been received. However, the John Hancock district manager denied ever giving appellant permission to credit any account when payment had not been made. Various records showed that as of May 10, 1979, there was a life insurance policy on the life of Williams with a death benefit of $20,000 payable to Carolyn Henton.

On May 10, 1979, Williams received a telephone call from Michael Grady, appellant's brother. Grady told Williams to meet him at Carolyn Henton's house. When Williams arrived at Henton's house, he was met at his car by Grady and James Willis. Williams got out of his car and ran down the street. Grady said to Willis, who had a pistol, "Let him have it." Willis obliged by shooting Williams.

Williams was found lying on the street. He had been shot in the back and left jaw, but managed to recover. The insurance policy lapsed after the shooting.

Appellant was indicted on June 27, 1980 on charges of first degree assault and conspiracy to commit the capital murder of Onzell Williams. A jury found appellant guilty of the conspiracy charge and she appealed from the judgment and sentence rendered pursuant to the jury verdict.

Appellant contends that Instruction No. 6 to the jury, which defined conspiracy and capital murder, was prejudicially erroneous. This court agrees. The offending instruction reads as follows:

## INSTRUCTION NO. 6

The following terms used in these instructions are defined as follows:

conspiracy.

Means an agreement which need not be express or formal with one or more persons that in order to promote or facilitate the commission of an offense one or more of them will engage in conduct which constitutes the offense and that an overt act is committed by any one of these persons in pursuance of the agreement.

capital murder.

Is the unlawful, wilful, knowing and deliberate premeditated killing or causing of the killing of another human.

Note 8, of the Notes on Use to MAI–CR 33.00 reads:

8. Unless the Notes on Use expressly require or permit the definition of a term, word or phrase, it must not be defined even if requested by counsel or the jury. *State v. Abrams* [Abram], 537 S.W.2d 408 (Mo. banc 1976). In short, the Notes on Use under the MAI–CR forms approved or reapproved after May 1, 1978 give complete and exclusive directions as to all terms, words or phrases which either must or may be defined.

Observe that Note 8 mandates that the Notes on Use give complete and exclusive directions concerning definition instructions. Instruction No. 7 to the jury was MAI–CR 18.04, the verdict directing instruction on conspiracy. The Notes on Use to MAI–CR 18.04 neither expressly require nor expressly permit a definition of conspiracy. Neither do the Notes on Use to MAI–Cr 15.02, the approved verdict directing instruction on capital murder, require or permit a definition of capital murder to be given. MAI–CR 33.01, which sets forth approved definitions, includes neither a definition of "conspiracy" nor a definition of "capital murder."

▇ Thus, the giving of Instruction No. 6 was error. MAI–Cr Notes on Use are to be religiously observed without variation. *State v. Grady,* 577 S.W.2d 930, 931[1, 2]

(Mo.App.1979). The state concedes as much, but argues that appellant was not prejudiced by the error. The giving of an instruction in violation of the rules or applicable notes on use constitutes error, the prejudicial effect of which is to be judicially determined. Rule 28.02(e); *State v. Grady, supra* at 932[3]; *State v. Tettamble,* 561 S.W.2d 414, 416[4, 5] (Mo.App.1977).

The giving of Instruction No. 6 was prejudicially erroneous because it reduced the burden placed on the state to prove the existence of a conspiracy. The instruction included language not present in the conspiracy statute, § 564.016 RSMo. 1978, which reads in part:

Conspiracy.—1. A person is guilty of conspiracy with another person or persons to commit an offense if, with the purpose of promoting or facilitating its commission he agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such offense.

Instruction No. 6 in defining conspiracy said it meant an agreement "which need not be express or formal." Instruction No. 7, the verdict directing instruction on conspiracy required a finding that there was an agreement on the part of defendant with others to commit the offense of capital murder. Agreement is a common word. The average juror would know what it means. The attempt to refine the verdict directing instruction or elaborate on it by further defining conspiracy, especially by adding the words "need not be express or formal" and also the words "that an overt act is committed" in effect modified the verdict directing instruction by unnecessarily explaining and defining its terms.

It was also error to define capital murder. The definition was not in any way required by the evidence which was adduced at the trial. The language in the verdict directing instruction MAI–CR2d 18.04 sufficiently submitted to the jury the offense of which the appellant was accused. It was unnecessary to add anything to that instruction and the addition of the definition of capital murder could only serve to confuse the jury.

The jury was instructed on circumstantial evidence. MAI–CR2d 3.42. The definition of conspiracy only served to unduly emphasize to the jury the possibility of proving the state's case by circumstantial evidence through proof of an agreement which "need not be express or formal."

The state argues that the definition of capital murder exactly tracked the statutory definition of the offense, § 565.001 RSMo. 1978, and that the definition of conspiracy also tracks the statute, but with the addition of "need not be express or formal" and "requires that an overt act be committed." The giving of Instruction No. 6 containing the definitions was error and would have been error even if the definitions had followed the statutory language exactly. The additional language added to the conspiracy definition caused it to be prejudicial error by lessening the burden of proof of the state.

■ The burden of proof concerning prejudice is on the party deviating from the approved instruction or Notes on Use, in this case the state. *State v. Phillips,* 583 S.W.2d 526, 530[4] (Mo.1979). The state has not shown that the erroneous instruction was not prejudicial. Therefore, the cause must be reversed and remanded.

■ In closing argument the prosecutor invoked the names of the notorious mass murderers—John Wayne Gacey and Charles Manson—while discussing the weight to be given the testimony of character witnesses for the appellant. An objection to the reference was overruled by the court. Then at the close of his argument, the prosecutor said the evidence showed appellant to be "a member of the Board of Directors of our local Murder Incorporated." No objection was made to the latter statement. Prosecutors should not be permitted to apply unbecoming names or epithets to defendants. *State v. Stockbridge,* 549 S.W.2d 648 (Mo.App.1977); *see also, State v. Swenson,* 551 S.W.2d 917, 919[2–4] (Mo.App.1977). It is sufficient to say that the references by the prosecutor to Gacey, Manson and Murder Incorporated were be-

yond the bounds of allowable prosecutorial argument and such references should not be made when the case is tried again.

It is unnecessary to discuss the other points raised by appellant because they may not arise from the evidence adduced or arguments made in a new trial.

The judgment is reversed and the cause remanded.

DOWD, J., and LACKLAND H. BLOOM, Special Judge, concur.