**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Richard Berlin ALLBRITTON,
Defendant-Appellant.**

No. 46747.

Missouri Court of Appeals,
Eastern District,
Division One.

Sept. 20, 1983.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Nov. 15, 1983.

Application to Transfer Denied
Dec. 20, 1983.

John Ashcroft, Atty. Gen., Janet E. Papageorge, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

James E. Spain, Dale E. Nunnery, Hyde, Purcell, Wilhoit, Spain, Edmundson & Merrell, Poplar Bluff, for defendant-appellant.

SIMON, Presiding Judge.

Richard Berlin Allbritton (Allbritton) appeals from his convictions in the Circuit Court of Perry County on the following counts: forcible rape (rape); forcible sodomy (sodomy); attempted forcible rape (attempted rape); burglary, first degree (burglary); and a count of exhibiting a deadly weapon as contained in a separate cause. Both causes were tried together and Allbritton was sentenced to three separate terms of life imprisonment for each count of rape, sodomy and attempted rape. He received a sentence of ten years for burglary and five years for the flourishing charge. All sentences are to be served consecutively. His appeal was originally filed in the Supreme Court of Missouri, but was transferred to our court.

On appeal, Allbritton contends the trial court erred in failing: (1) to sever the causes; (2) to define "serious physical injury" in the definitional instruction; (3) to give a separate instruction defining forcible rape in the verdict director for attempted rape; (4) to permit defense counsel to question a witness regarding her knowledge of Allbritton prior to the rape; (5) to sustain Allbritton's motion in limine to prevent witnesses from testifying about Allbritton's having been in the penitentiary; (6) to exclude xerox copies of photographs in that a proper foundation had not been laid; and (7) to refuse correction of a typographical error in a verdict director after the jury retired to deliberate. We affirm.

Allbritton does not contest the sufficiency of the evidence to support the verdict. A brief factual setting, most favorable to the jury verdict, will be set forth. *State v. Stapleton,* 518 S.W.2d 292, 296 (Mo. banc 1975).

On the evening of May 31, Timothy Duffy (Duffy) worked the night shift (10:00 p.m. to 6:30 a.m.) at a donut shop in Cape Girardeau. He testified that about midnight a man, he identified as Allbritton, came into the shop and stayed until 2:30 a.m. He asked Duffy if he could leave his bottle of liquor at the shop and pick it up later. Duffy placed the bottle, which was three-fourths empty, under the counter, but Allbritton never returned for it.

About a block from the donut shop, a young woman was awakened by a knock on her apartment door at about 3:00 a.m. Keeping the door chained, she answered the door, and a man later identified as Allbritton, asked for her by name. He informed her that he had hit a small blue Pinto in the apartment's parking lot and someone told him it might belong to her. Since the description matched her Pinto, she told Allbritton she would call the police to report the accident. Allbritton claimed he was drunk and begged her not to, promising to pay for the damage. She requested some identification, whereupon Allbritton handed her his driver's license and car title. After copying down the information, she dressed and went to look at the damage to her car. In fact, there was no damage, nor was there any car with signs of a recent collision on the lot. Allbritton's car was not there either. Allbritton said his friend must have gotten frightened and fled in the car. They returned to her apartment so that she could give him back his driver's license and car title. As she entered her apartment, Allbritton placed his left foot in the doorway. He insisted she give him the paper she had written his license and title numbers on. She could not remember where she had

placed this information, but promised to destroy the paper when she found it. Allbritton claimed he wanted the paper because he was afraid she could get him on a DWI and he did not want to go back to the penitentiary. When Allbritton stepped into the apartment, she became frightened, and began to scream. Allbritton ordered her to stop screaming, pulled a knife from his pocket, and placed it to her neck. As she tried to get away from Allbritton, a Kool cigarette he had been smoking somehow caught her hair on fire.

Jeff Hamilton (Hamilton), the resident manager of the apartment complex, had received a call reporting the screams. Hamilton testified he noticed the young woman was very upset when she opened the door and told him that Allbritton refused to leave her apartment. Upon Hamilton's arrival, Allbritton left the apartment and Hamilton's girlfriend called the police. An officer obtained a description of Allbritton and details of the incident from the victim. She gave a written statement at the station at 4:00 a.m. A Kool brand cigarette butt found at her apartment later that day was taken to the police station as evidence.

Around 4:30 a.m., at a residence about a 45 minute walk from the apartment, a mother and her 14 year old daughter were sleeping. The mother was awakened by a man touching her face. The man was later identified as Allbritton. When she woke, Allbritton apologized, claiming he had been working late and had accidentally entered her house instead of the home of a woman he lived with. She asked him if he could find his way out, Allbritton answered affirmatively, and started to leave the room. Meanwhile, her daughter awoke and went into the kitchen to get a drink of water. Allbritton waited for the daughter to return to her room before going down the hallway as if he was leaving. When the woman did not hear the front door open or close, she got out of bed to investigate. Finding Allbritton standing in the living room, she reached for the front door knob in order to let him out, but Allbritton put his hand on her to stop her, placed his other hand behind her back and began backing

her up against the wall. She ordered him to leave and a struggle ensued. Hearing the commotion, the daughter came out of her bedroom and asked what was going on. Her mother told her to return to her room and call the police. But, apparently concerned for her mother's safety, she remained. During the struggle, Allbritton got his knife out, hit her mother in the face with his knee, and cut her hand with the knife. He ordered the daughter to lie down on the floor or else he would kill her mother. She obeyed and he threw the mother down beside her on the floor of the living room. Allbritton ordered both women to remove their underpants, and when they did not comply, he rubbed the blade of the knife up and down their backs and legs. He threatened to cut the mother's throat if she continued to resist. He then removed their underpants and his own pants. After unsuccessfully attempting to have intercourse with both women, Allbritton ordered the daughter to sit up. The mother offered to sit up instead but when she tried to, he pushed her head down and cut the back of her neck with his knife. Allbritton forced the daughter to commit oral sodomy, then raped her. Afterward, he took her into the bathroom and wiped her off with a washrag to get rid of any evidence. The mother remained lying on the floor because Allbritton threatened to harm her daughter if she moved.

Allbritton returned to the living room, grabbed both women, took them into a bedroom, turned on the light and asked if anyone else was in the house. They answered that no one else was in the house and he ordered the daughter back to the living room, reminding her if she tried to do anything, he would kill her mother. Allbritton took the mother into the bedroom and threw her on the bed telling her to get down on the floor, because "he was ready to go again." While she was kneeling, he told her he wanted her money. He took her into the kitchen to look for her purse and his cigarettes. When the purse was found, he took what money there was and a Bic Abalone lighter. Allbritton ordered the daugh-

ter to throw his Kool brand cigarettes to him.

Allbritton returned to the bedroom with the mother and, when she realized he intended to tie her up, she grabbed his hair and bit him on his left side. He hit her twice with his closed knife, causing extensive bleeding. He succeeded in tying her up and then tied the daughter up with his shirt. Allbritton left the residence at approximately 5:30 a.m. The mother untied herself, then her daughter, and called a friend, who notified the police. The mother gave the police a description of Allbritton. A blood stained Uncle Henry knife found at the scene, the shirt used to tie the daughter, and the washrag were seized as evidence. The daughter was taken to the hospital by the police.

Allbritton was arrested and taken into custody on June 2. After waiving his rights, Allbritton admitted to flourishing a knife at the apartment and acknowledged he was aware of the incident at the home of the victims, but claimed that he and two of his friends had gone to Illinois and did not return until 6:00 a.m. on June 1. Allbritton's sister-in-law, testifying in his behalf, claimed he was asleep in her home in Cape Girardeau about 5:30 a.m. on June 1.

The jury found Allbritton guilty on all counts.

Allbritton's first point is that he was prejudiced by the trial court's failure to sever the causes. As a result of the joinder, testimony of the prosecuting witness in the flourishing cause that Allbritton had been in the penitentiary, and that her intruder showed her a driver's license with Allbritton's name on it, was before the jury. Allbritton claims this testimony led the jury to identify him as the perpetrator of the rape and informed the jury of his prior criminal record and that the jury would not have been so informed had the causes been severed.

As authority, Allbritton relies on Rule 23.05 which provides:

"All offenses that are based on the same act or on two or more acts that are part of the same transactions that constitute parts of a common scheme or plan may be charged in the same indictment or information in separate counts."

Allbritton contends that the state did not allege or show the rape, sodomy, attempted rape and burglary charges were part of the same transaction constituting a part of a common scheme with the flourishing charge. *State v. McCrary,* 621 S.W.2d 266 (Mo. banc 1981) is controlling in the present case.[1] Our Supreme Court in *McCrary* construed the meaning of the words "a common scheme or plan" as used in Rule 23.05 to be the "requirement that all of the offenses charged must be 'products of a single or continuing motive.'" *Id.* at 271.

In *McCrary,* the defendant was tried on four counts: assault with intent to kill with malice occurring on November 13, 1978, arson and assault on March 8, 1979, and carrying a concealed weapon on March 12, 1979. The victims were the husband and father-in-law of the defendant's former girlfriend, with whom he had lived for a number of years and two children born of the relationship between the defendant and his former girlfriend. After he threatened his former girlfriend, her husband was shot and the house was firebombed and her father-in-law was injured. The defendant complained of improper joinder and failure to sever. The court held the joinder was proper because the offenses were "[t]he product of the single, continuing motive of revenge by harassment for the loss of his paramour and children." *Id.* at 271.

---

1. Case law decided prior to *McCrary* analogized the joinder of offenses rule to the common law evidentiary rule excluding the admission of evidence of unrelated crimes to establish a defendant's *guilt* of the crime charged. But the joinder of offenses rule deals with the more basic question of what crimes can be charged in a proceeding. The two rules deal with different questions, making the wholesale importation of the evidentiary rule into the law dealing with joinder of offenses inappropriate. Whether the joinder of offenses is unduly prejudicial to a criminal defendant is a separate issue from the question of whether offenses have been properly joined under former Rule 23.05. *McCrary,* at 271, ft. 7.

The *McCrary* court held the state's evidence, indicating the defendant had a history of shooting into the victim's house, had in his possession the weapon used in the assault, and was arrested a short distance from the victim's residence, was "ample evidence of the existence of a plan of harassment or revenge." *Id.* at 271.

Similarly, in the present case, the record indicates Allbritton, after drinking with friends, knocked at the apartment of a young woman and on the pretext of a fabricated story forced his way into her apartment and placed a knife against her throat. The apartment manager arrived causing Allbritton to leave before he could attempt anything further. Shortly thereafter, after being frustrated in his first encounter, Allbritton enters uninvited at a nearby residence and uses his knife on a woman and her daughter. He threatens, cuts, robs, rapes and sodomizes. Evidence was presented that the same knife was used on all the victims, Kool brand of cigarettes were identified by all victims as belonging to Allbritton and the crimes occurred in the same vicinity, within a short time of each other. Applying the test set forth in *McCrary,* we conclude there was ample evidence of the existence of a common plan or scheme by Allbritton to assault these women with a knife whether to rape or rob them, and therefore the causes were properly joined pursuant to Rule 23.05.

Further, even though the offenses are properly joined, severance is within the sound discretion of the trial court to insure a fair determination of the defendant's guilt or innocence of each offense. *State v. Duren,* 556 S.W.2d 11, 20 (Mo.banc 1977). Reversed on other grounds *sub. nom. Duren v. Missouri,* 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979). An abuse of the trial court's discretion would be indicated if denial of severance results in clear prejudice to the defendant's right to a fair determination of his guilt or innocence as to each offense. *State v. Williams,* 603 S.W.2d 562, 567–68 (Mo.1980).

In the exercise of its discretion, the trial court should consider among other relevant factors, the number of offenses charged, the complexity of the evidence to be offered and whether the trier of fact will be able to distinguish the evidence and apply the law intelligently as to each offense. Further, the trial court has a continuing duty during the trial to counter prejudice and order severance if necessary to achieve the fair result intended. *Duren,* at 20; *McCrary,* at 272.

Applying these standards to the present case, we conclude the jury could intelligently distinguish the law and evidence applicable to each of the offenses and was so instructed. (MAI 2.70) The evidence is not complex and the offenses occurred in close proximity to each other. We find no abuse of discretion.

The second point on appeal is that the trial court erred in failing to define the term "serious physical injury" as used in the definition instruction of "forcible compulsion." This issue has not been preserved for our review. Therefore, we must determine if the omission of this definition resulted in manifest injustice. Rule 29.12(b).

Verdict directors MAI–CR 2d 20.02.1, 20.-08.1, 23.50, and 18.02 respectively were submitted. The applicable Notes on Use of MAI–CR 20.02.1 (rape) and MAI–CR 20.01.1 (sodomy) require that the phrase "forcible compulsion" be defined. As a result the definitional instruction for "forcible compulsion" (MAI–CR 2d 33.01) was submitted to the jury, but this definition contains the phrase "serious physical injury." The applicable Notes on Use require that the phrase should be defined

"*Serious Physical Injury*
Means physical injury that creates a substantial risk of death or that causes serious permanent disfigurement or protracted loss or impairment of the function of any bodily member or organ. [556.-060(24)]" MAI–CR 2d 33.01.

Obviously, the use of a deadly weapon, such as a knife, creates for the victims a "substantial risk of death, impairment, or

disfigurement." The jury was not misled by the trial court's omission of the definition. Surely, they know what serious physical injury is when a knife is placed to the throat or otherwise menacingly used or rubbed on an individual's body. No manifest injustice occurred.

In his third point, Allbritton contends the trial court's failure to define rape in the verdict director for attempted rape (MAI–CR 2d 18.02) was error. The issue was not preserved for review, consequently, our review is limited to a finding of manifest injustice. Rule 29.12(b).

■ Submission of an instruction in violation of the rules or applicable notes on use constitutes error, the prejudicial effect to be judicially determined. Rule 28.02(e); *State v. Franks,* 643 S.W.2d 624 (Mo.App. 1982). All instructions must be considered together as a whole when reviewing allegations of instructional error. *State v. Holt,* 592 S.W.2d 759, 776 (Mo.banc 1980).

As support for his contention, Allbritton relies on Note on Use No. 3 in MAI–CR 2d 18.02.

It is clear that the purpose of No. 3 of the Note on Use (MAI–CR 2d 18.02) is to insure that whenever an attempt offense instruction is submitted, the jury is correspondingly informed of the elements of the object crime which serve as the underlying foundation for the attempt charge.

■ The jury should have been given a definition of rape for the attempted rape instruction. However, this omission does not rise to the level of manifest injustice because the elements of rape were set forth in MAI–CR 2d 20.02.1, the verdict director for forcible rape. Furthermore, the verdict director for the charge of burglary (MAI–CR 2d 23.50) included a definition of forcible rape so that the jury was again apprised of the essential elements of the crime of rape, the object crime in the charge of attempted rape. Consequently, no manifest injustice occurred.

The fourth point on appeal is the trial court erred by failing to permit Allbritton to question one of the victims (the 14 year old daughter) about her prior knowledge of him. Allbritton sought to attack the daughter's credibility by showing that she had previously heard his name in connection with her sister, whom he had dated. The state's objection based upon relevancy was sustained.

■ Both parties concede that in criminal cases the question of relevancy is a determination left to the trial court's discretion, for it is in a better position to weigh the probative value of the evidence against its possible prejudicial effect. *State v. Wood,* 596 S.W.2d 394 (Mo.banc 1980).

■ Evidence is relevant and admissible if it tends to logically prove or disprove the facts in issue or it corroborates other relevant evidence relating to some material matter. *Id.* at 402; *State v. Berry,* 609 S.W.2d 948, 954 (Mo.banc 1981).

■ Upon review of the record, we find it clear from the daughter's testimony that she had no prior knowledge of a relationship between Allbritton and her sister. Her voir dire examination indicates that further cross-examination in the presence of the jury would not have elicited any inconsistent testimony for impeachment purposes. Consequently, we conclude Allbritton's fourth point is also meritless.

Allbritton's fifth point is that the trial court erred in overruling his motion in limine to prevent state's witnesses from testifying about his statement that he had spent time in the penitentiary.

■ It is fundamental that the admission of evidence complained of in a motion in limine must be objected to at trial. *State v. Foster,* 608 S.W.2d 476 (Mo.App. 1980). No objection was raised at trial in the case, consequently, our review is limited to a finding of manifest injustice. Rule 29.12(b).

■ The record indicates Allbritton refused to leave the victim's apartment without a paper on which the victim had written some identification numbers, claiming "he wasn't going back to the pen."

Allbritton then forced his way into the apartment and pulled his knife out. Allbritton's remark, made almost simultaneously with his threatening her with the knife, is admissible as part of the *res gestae.* Statements made contemporaneously with, or immediately preparatory to, a particular litigated act, which tend to explain, illustrate or show the motive for the act, are admissible as part of the *res gestae. State v. Meister,* 630 S.W.2d 605, 606 (Mo. App.1982). Without admission of this evidence, it would be difficult for the victim to give an adequate and fair account of the occurrence. *State v. King,* 588 S.W.2d 147, 150 (Mo.App.1979).

Consequently, Allbritton's fifth point is denied.

In the sixth point, Allbritton contends that it was error for the trial court to admit photographs, exhibit numbers 20, 22–33, 35 and 38, into evidence over his objection that the state did not lay a proper foundation for the introduction of the photographs. He does not question their relevancy.

It is well recognized that any photographic evidence which is relevant is admissible. *State v. Rogers,* 523 S.W.2d 344, 347 (Mo.App.1975). Generally, photographic evidence must be authenticated as an accurate and faithful representation of what it depicts. *State v. Daugherty,* 631 S.W.2d 637, 641 (Mo.1982). Allbritton contends the state did not show the photographs were fair and accurate representations and that the persons depicted in the photographs possessed similar characteristics as the assailant described by the victims.

The record indicates that only the photographs numbered 34 and 38 were used to secure a reliable identification of Allbritton. The remaining photographs, used in the photographic line-up and shown to complaining witnesses, are relevant to the jury's determination of the accuracy of the witnesses' identification of Allbritton. *State v. Degraffenreid,* 477 S.W.2d 57, 62 (Mo.banc 1972).

Photographs number 34 of Allbritton and number 38, of a man who looked like Allbritton, were sufficiently authenticated in this case. The record reflects that the police officers who took these photographs testified the photographs were accurate and faithful representations of the men depicted. Therefore, we conclude the photographs were properly admitted into evidence.

Finally, Allbritton contends the form of the verdict director (MAI–CR 2d 23.50) was confusing, ambiguous and misleading to the jury; specifically, the last paragraph which provides in part:

"If you do not find the defendant guilty under Count IV of burglary in the first degree, you will assess and declare the punishment at imprisonment for a term of years...."

Obviously, the instruction should have read: "If you do find...." Any deviation from the rules or notes on use is error, the prejudicial effect to be judicially determined. Rule 28.02(e); *State v. Franks,* 643 S.W.2d 624, 627 (Mo.App.1982).

Upon review of the record, it is clear the jury viewed the error as typographical, and in a note to the trial judge requested clarification. The trial judge corrected the clerical error before the jury reached its verdict. Allbritton was not prejudiced by this error.

The judgment is affirmed.

STEPHAN and KAROHL, JJ., concur.