**STATE of Missouri, Respondent,**

v.

**Daniel C. CHANEY, Appellant.**

**No. 43893.**

Missouri Court of Appeals,
Eastern District,
Division Four.

Nov. 8, 1983.

Motion for Rehearing and/or Transfer to
Supreme Court Out of Time
Denied Dec. 13, 1983.

Shaw, Howlett & Schwartz by Joseph Howlett, Clayton, for appellant.

John Ashcroft, Atty. Gen. by Kristie Green, Asst. Atty. Gen., Jefferson City, George R. Westfall, Pros. Atty., Clayton, for respondent.

SATZ, Judge.

Defendant was convicted by a jury of rape and sodomy. He was sentenced to 20 years on the rape charge and 10 years on the sodomy charge. The sentences were to be served consecutively. We affirm.

According to the State's evidence, at approximately 6:00 p.m. on April 2, 1980, the victim, G__ K__, was driving from work on Interstate 270. Defendant, driving alongside in a truck, flagged the victim down and alerted her of possible car trouble. The victim and defendant pulled on to opposite shoulders of the highway. Defendant then crossed over to the victim's side of the road and offered to assist the victim with her car repairs. After making an examination of the car, defendant got into the car with the victim, drove the car across the highway and parked behind his truck. With the victim seated in the car, defendant lay down on the floor of the car and ostensibly began to examine the car under the dashboard. The defendant began rubbing his hand up and down the victim's leg and thigh. Defendant then got up from underneath the dashboard, sat on the passenger side of the car, still keeping his hand on the victim's leg. When the victim complained, resisted and attempted to leave the car, the defendant pulled out a knife. He pointed the knife to her waist. When she again attempted to get out of the car, he pulled her back into the car by her arm, still holding the knife at her waist and rib area. She thought he was going to kill her. With his free hand, defendant pulled down the victim's pantyhose, put his head between her legs and performed oral sex. He then

put his finger between her legs and into her vagina. She kept telling him to put the knife away and not to hurt her. He told her to scoot down. He then pulled his jeans down, spread her legs and entered her with his penis. He did not ejaculate. He then left the car.

Defendant took the stand in his own defense. He admitted his presence at the scene but said the victim was the aggressor. According to him, the victim pulled up alongside of him while he was driving along and honked her horn. She then pulled on to the left shoulder of the road, and, he, thinking something was wrong, pulled over to the right shoulder. He also testified that she enticed him into her car, asked him to look under the dash, pulled her skirt up and exposed herself, rubbed up against him, kissed him and then masturbated him. She then grabbed his wallet and tried to get out of the car. He grabbed her arm, took the wallet back, and she told him that he'd be sorry. He left.

Defendant asserts eight claims of error. Additional facts will be related when necessary to a particular claim.

### I

Defendant was convicted of "forcible" rape and "forcible" sodomy. The pattern verdict directing instruction for each of these crimes includes the term "forcible compulsion." See MAI–CR2d 20.08.1 and MAI–CR2d 20.02.1. This term must be defined "whether the definition is requested or not." Notes on Use, MAI–CR2d 20.08.1 and MAI–CR2d 20.02.1. Accordingly, the trial court submitted the following definitional instruction:

"Forcible Compulsion.

Means either

(a) Physical force that overcomes reasonable resistance, or

(b) A threat, expressed or implied, that places a person in reasonable fear of death, *serious physical injury* or kidnapping of himself or another . . . . . "
MAI–CR2d 33.01 (Emphasis Added).

As can be seen, this definition contains the phrase "serious physical injury." The Notes on Use to the pattern instructions used also require the phrase "serious physical injury" to be defined "whether the definition is requested or not." The trial court, however, failed to submit a definition of this phrase. This failure, defendant contends, was reversible error. We disagree. The failure may have been error, but, on the present record, it was not reversible error.

■■■ Defendant failed to make this assertion of error in his motion for a new trial and, thus, failed to preserve this error for appeal. *E.g., State v. James,* 641 S.W.2d 146, 148 (Mo.App.1982); *State v. Young,* 610 S.W.2d 8, 12 (Mo.App.1981); Rule 28.03. However, we consider defendant's assertion of error under the plain error doctrine. *See, e.g., State v. Sanders,* 541 S.W.2d 530, 533 (Mo. banc 1976). Instructional error amounts to plain error only if the trial court "has so misdirected or failed to instruct the jury on the law of the case as to cause manifest injustice." *State v. Murphy,* 592 S.W.2d 727, 733 (Mo. banc 1980); Rule 29.12(b). In the present case, the phrase "serious physical injury" does not appear in the verdict director itself, but as noted, it is contained in the definition of "forcible compulsion." Literal interpretation of the Notes on Use and strict logic require that

the phrase "serious physical injury" also be defined, and, therefore, the failure to define this phrase is error. *State v. Rodgers,* 641 S.W.2d 83, 85 (Mo.1982); *State v. Ogle,* 627 S.W.2d 73, 74 (Mo.App.1981).[1] The prejudicial effect of this error, however, is judicially determined. *State v. Rodgers, supra* at 85; Rule 28.02(e).

Two cases recently before this court contain fact patterns in which a defendant allegedly used a knife while committing the crimes of rape and sodomy. *State v. Allbritton,* 660 S.W.2d 322 (E.D.Mo.1983); *State v. Van Doren,* 657 S.W.2d 708 No. 45951, (E.D.Mo.1983). In each of these cases, as in our own, the trial court defined "forcible compulsion" but failed to define "serious physical injury." In those cases, as here, the issue was considered under the doctrine of plain error. In each case, the Court found no plain error.

In *Allbritton* and *Van Doren* the Court noted the phrase "serious physical injury" is defined as ". . . physical injury that creates a substantial risk of death or that causes serious permanent disfigurement or protracted loss or impairment of the function of any bodily member or organ." MAI–CR2d 33.01. In those cases, the Court found no manifest injustice resulted from the failure to give this definition, because

1. MAI–CR2d 20.02.1, "Rape: Forcible Compulsion," and MAI–CR2d 20.08.1, "Sodomy: Forcible Compulsion," each require the use of the term "forcible compulsion" as an element of the respective crime. In a separate paragraph, each instruction also provides that punishment for the crime may be enhanced if "serious physical injury" was inflicted. The drafters of these instructions may have had the possible separate use of "forcible compulsion," as an element of the crime, and "serious physical injury," as a punishment enhancer, in mind when they required that both phrases must be defined if used. Note 3, MAI–CR2d 20.02.1; Note 3, MAI–CR2d 20.08.1. In any event, requiring "serious physical injury" to be defined presupposes the definition is outside the jury's ken; *See State v. Rodgers, supra* at 85; therefore, whether used for enhancement of punishment or as part of the definition of "forcible compulsion," the phrase "serious physical injury" must be defined. *Id.* at 85. This holding and the Notes on Use produce incongruities.

The term "kidnapping" also appears within the definition of "forcible compulsion," but the Notes on Use to MAI–CR2d 20.02.1 and 20.08.1 do not require "kidnapping" to be defined. However, the proper definition of the technical term "kidnapping" is certainly outside the ken of the jury, *see* § 565.110 RSMo 1978; MAI–CR2d 33.01. If "serious physical injury" must be defined because it is outside the ken of the jury, then certainly "kidnapping" should also be defined. Moreover, the Notes on Use to MAI–CR2d 19.20.1 and 19.20.2, "Kidnapping," require a definition of "forcible compulsion" if used. Note 3, MAI–CR2d 19.20.1 and 19.20.2. These Notes on Use, however, do not require a definition of "serious physical injury," and, thus, in submitting MAI–CR2d 19.20.2, this Court has held no error occurs if "serious physical injury" is not defined when it appears within the definition of "forcible compulsion." *State v. Morgan,* 645 S.W.2d 134, 137 (Mo.App. 1983).

use of a knife clearly indicates the victim is threatened with the substantial risk of death, or serious permanent disfigurement or loss of a bodily organ. This reasoning is as sound here as it was in *Allbritton* and *Van Doren*. Defendant here used a knife and the victim thought defendant was going to kill her. No additional clarification was needed by the jury. The facts spoke for themselves. When a knife is placed close to or against a victim's body to force the initiation and completion of a sexual act, surely the jury's definition of "serious physical injury" would be no different than that given by the MAI. Thus, the jury's inferences would not have been changed one bit by the MAI definition of the term "serious physical injury."

Defendant cites *State v. Ogle, supra,* to support his contention. He could also have cited *State v. Rodgers, supra.* In both these cases, on facts similar to the instant case, the trial court's failure to submit the definition of "serious physical injury" was held to be prejudicial and the convictions reversed. However, as pointed out by this Court in *Allbritton* and *Van Doren, supra,* the defendants in *Rodgers* and *Ogle* never displayed or implicitly threatened the victim with a knife. In *Rodgers* and *Ogle* the defendants accomplished their purpose by slapping or choking the victim with their hands. In those cases, the jury could very well have reached their verdicts believing the quality and amount of force used was less than the quality and amount of force needed to fulfill our legal definition of "serious physical injury." This is not so here, where a knife was used. Absent further direction from our Supreme Court, we follow the prior holdings and reasoning of this Court and, on the present facts, find the trial court's failure to define "serious physical injury" caused no manifest injustice.

## II

Defendant next contends that his due process rights were violated because the evidence officer failed to secure and preserve the victim's undergarments. We disagree.

In support of his contention, defendant cites *State v. Havas,* 601 P.2d 1197 (Nev. 1979). In *Havas,* the pants and undergarments of an alleged rape victim were not produced for inspection when requested by the defendant. No explanation was given for the unavailability of the requested garments nor was there a contention that they were intentionally destroyed by the prosecutor. "The garments were either lost, destroyed or *simply not taken into possession during the investigation of [the] case.*" (Emphasis Added). *Id.* at 1197. The court found the garments were material and exculpatory evidence and held the failure to preserve them violated the defendant's due process rights.

■ The *Havas* case and defendant's contention rest on the seminal decision of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) and its progeny. *Brady* established the rule "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of good faith or bad faith of the prosecution." *Id.* at 87, 83 S.Ct. at 1196. This duty to disclose material and exculpatory evidence exists where there is a general request or even no request. *United States v. Agurs,* 427 U.S. 97, 106–107, 96 S.Ct. 2392, 2398–2399, 49 L.Ed.2d 342 (1976). Neither *Havas* nor defendant, however, details the logic or circumstances which would convert the prosecution's duty to preserve and disclose evidence to an affirmative duty of police officers to seek out and seize all evidence which might later prove exculpatory.[2] This Court, in dicta, rejected a similar due process contention where the police officers failed to test a gun, allegedly fired during a bank robbery, for fingerprints and failed to give defendant a powder residue test.

---

**2.** For the detailed extension of the *Brady* Rule see 34 A.L.R.3rd, 24 (1970), *Withholding Evidence—By Prosecution; See, also, United States v. Bryant,* 439 F.2d 642 (D.C.Cir.1971);

*State v. Craig,* 545 P.2d 649 (Mont.1976); *Torres v. State,* 519 P.2d 788 (Alaska 1974); *People v. McCann,* 115 Misc.2d 1025, 455 N.Y. S.2d 212 (Sup.Ct.1982).

*State v. Estes,* 562 S.W.2d 142, 143–145 (Mo.App.1978). This clearly suggests we would be more than reluctant to adopt the *Havas* rule.[3] *See State v. Pemental,* 434 A.2d 932, 936 (R.I.1981).

■ However, we have no need to address the propriety of the *Havas* rule here. *Havas* does not suggest a change in the burden of proof carried by a defendant who invokes the *Brady* rule. The defendant must show the evidence in issue is material and exculpatory. *State v. Havas, supra* at 1197; *e.g., State v. Berry,* 609 S.W.2d 948, 952 (Mo.1981). Defendant here does not and cannot sustain this burden. The victim testified that defendant did not ejaculate during this incident and also testified that her undergarments were not torn or stained. This is no more than defendant apparently seeks to prove with this physical evidence, for, in his brief, defendant states he "should have been able to show the jury that [the undergarments] were not torn and that there was no semen spots found by the lab." Thus, the victim's undergarments would simply have corroborated the victim's testimony. Defendant's contention has no merit.

### III

Defendant's next complaint centers on alleged procedural errors. Defendant filed a request for a disclosure. The request was not timely answered and defendant filed a motion to compel answers, followed by another motion to dismiss for failure to answer. Defendant then filed a motion to dismiss the indictment, or, in the alternative, a motion for bill of particulars, on the grounds that he had not received a copy of the indictment. In addition, defendant filed motions for change of venue and for reduction of bond. Defendant then filed a motion for particularized discovery "to gather information" to support his motions for change of venue and reduction of bond.

Defendant argues the prosecutor was guilty of misconduct in failing to promptly deliver a copy of the indictment and other requested information, and, because of this misconduct, defendant argues, he was unable to properly prepare his defense. Defendant also contends the trial court erred in denying his motions for change of venue and reduction of bond before considering the motion for particularized discovery. Defendant's arguments have no merit.

■ At the hearing on defendant's motions, defendant withdrew his motion to compel answers and motions to dismiss for failure to answer, stating the prosecutor "has [now] disclosed the information that we thought he had." Similarly, the motion to dismiss the indictment was withdrawn because defendant's counsel stated the problem of obtaining a copy of the indictment "ha(d) been taken care of." Having received the information requested and having withdrawn his requests for sanctions for alleged prosecutorial misconduct for not providing the information, defendant, in effect, was no longer seeking a remedy from the trial court. He cannot now request relief from this Court when that relief was not sought below. *E.g., Gambrell v. Kansas City Chiefs Football Club,* 621 S.W.2d 382, 385 (Mo.App.1981).

■ Similarly, defendant cannot complain of the order in which the motions were considered. At the hearing, the trial judge asked: "Why don't we take the motion for the change of venue first, gentlemen, if that's all right with you?" Defendant's trial counsel responded, "Yes, Sir."

---

3. In *State v. Pemental, supra,* the court rejected the defendant's contention that police officers had the duty to seize and analyze the bedlinen of a victim who allegedly was forced by defendant to help defendant ejaculate. The court stated:

"We recognize that police departments in this state, as elsewhere, vary in the degree of sophistication with which they investigate evidence by scientific means. Even the most well-equipped and knowledgeable investigators may overlook or fail to pursue every clue or lead upon which scientific evidence might be predicated. We are reluctant to adopt a rule that would overturn a conviction based upon the required quantum of proof beyond a reasonable doubt solely on the basis that defendant might point out some scientific mode of investigation which was not pursued by the police." *Id.* at 936.

Thus, defendant's counsel effectively waived any objection to the order of taking up the motions. Moreover, defendant has failed to show how he was prejudiced by the order in which the motions were heard. *See, e.g., State v. Gaskin,* 618 S.W.2d 620, 624 (Mo.1981).

## IV

Defendant next complains the trial court erred in overruling his motion for change of venue. Defendant claims "a general feeling among the residents of [St. Louis County] of fear, anger and retribution" necessitated the change. He argues that because he offered the only evidence on the issue of prejudice in this case, the trial court should have granted the motion for change of venue "on the basis of the greater weight of the evidence presented." Defendant's evidence in support of his motion for change of venue was of three kinds: (1) testimony of an investigator of an increase in newspaper reporting of rape cases from 1979 through the time of this alleged incident; (2) testimony concerning the reporting of this particular incident; and (3) the affidavit of 5 residents of St. Louis County who "believed" that defendant could not have a fair trial in St. Louis County.

■ At the time of the hearing on the motion for change of venue § 545.430 controlled the requirements for change of venue.[4] This statute provides for a change of venue when "the minds of the inhabitants of the county in which the cause is pending are so prejudiced *against the defendant* that a fair trial cannot be had therein." (Emphasis Added). Defendant's demonstration of increased newspaper publicity about rape does not meet the statutory requirement of demonstrating prejudice against *this* defendant. Similarly, defendant's evidence concerning the reporting of his case is not sufficient to warrant a change of venue. The newspaper publicity

of defendant's case appeared shortly after the crime occurred, while the trial took place six months later. Publicity which is almost contemporaneous with the alleged crime is not sufficient, standing alone, to compel a conclusion that defendant did not receive a fair trial. *See State v. Hayes,* 624 S.W.2d 16, 19 (Mo.1981).

■ The affidavits are likewise insufficient. The beliefs of the affiants that defendant could not have a fair trial in St. Louis County are based upon their statements that they read the newspaper publicity discussed above. The insufficiency of these newspaper articles to support a change of venue is not changed by the fact that these articles were read by five residents of St. Louis County.

■ The question of change of venue is purely a matter within the trial court's discretion. *See State v. Odom,* 369 S.W.2d 173, 180 (Mo. banc 1963). Defendant did not establish an abuse of discretion in this case. More important, perhaps, we have carefully researched the record and there is no indication defendant's voir dire of the jury panel failed to protect him from a partial or biased jury.

## V

Defendant also challenges the adequacy of the voir dire procedure. On voir dire, six members of the thirty person panel admitted some knowledge of this case. Defendant requested permission to separately voir dire these six panelists. Defendant claims the trial court's denial of this request was prejudicial error. We disagree.

■ In Missouri, parties do not have a right to voir dire jury panel members separately. *See, e.g., State v. Yowell,* 513 S.W.2d 397, 403 (Mo. banc 1974). The trial court controls the voir dire examination with its discretion *id.* at 403, and the court's

4. Supreme Court Rule 32 which includes rules on change of venue was enacted to replace Former Rule 30, repealed on June 13, 1979. When Rule 32 was suspended until further order of the court, 588 S.W.2d XXXVIII, a hiatus resulted in which no Supreme Court Rule governing venue was effective. The date of the hearing on the Motion for Change of Venue fell within this hiatus so that the disposition of defendant's motion was governed by judicial decisions and applicable statutes. Rule 19.04.

exercise of its discretion will not be disturbed unless manifestly abused. *State v. Lumsden,* 589 S.W.2d 226, 229 (Mo. banc 1979).

 Defendant's contention rests on the unstated premise that a voir dire of panel members separately would have disclosed otherwise hidden prejudice. However, defendant does not show nor does the record indicate any possible source of hidden prejudice against the defendant by the panel members. Thus, on the present record, the trial court did not abuse its discretion in requiring the voir dire to be conducted in the usual manner.

## VI

Defendant also contends there were at least sixteen instances of prosecutorial misconduct, and he argues the trial court erred in overruling his various motions for mistrial. These instances of misconduct ranged from alleged unjustifiable name calling to several alleged attempts to violate the trial court's order in limine. On several occasions, the court admonished the prosecutor for his conduct and, when requested, instructed the jury to disregard the prosecutor's comments or questions. Similarly, timely imposition of objections by defendant's counsel halted any violation of the order in limine prior to the disclosure of any possible prejudicial information.

 Trial courts have discretion in dealing with trial error and alleged misconduct. They have a "superior vantage point from which to assess the pervasive effect of a prejudicial statement and whether it can be dissipated by timely and appropriate action short of declaring a mistrial." *State v. Charles,* 542 S.W.2d 606, 611 (Mo.App.1976). Most often, an instruction to the jury to disregard an improper comment is sufficient to cure the impropriety. *See State v. Dunn,* 615 S.W.2d 543, 548 (Mo.App.1981). Moreover, prosecutorial misconduct does not require the drastic remedy of a mistrial, unless the misconduct results in prejudice to defendant beyond the ability of a court's instruction to remedy the error. *State v. Charles, supra* at 611. Any possible harmful effects of the prosecutor's alleged misconduct here were remedied at trial. There was no need for the drastic remedy of mistrial in this case.

## VII

Defendant next contends the trial court erred in submitting the issue of rape to the jury on the uncorroborated testimony of the victim. We disagree.

"A conviction for rape may be sustained upon the uncorroborated testimony of the [victim] alone, unless her testimony is contradictory and in conflict with physical facts, surrounding circumstances, and common experience so as to be so unconvincing and improbable that it is extremely doubtful, in which case corroboration is required to sustain the verdict." *State v. Phillips,* 585 S.W.2d 517, 520 (Mo.App.1979); *State v. Russell,* 581 S.W.2d 61, 66 (Mo.App.1979). Defendant points out only one instance of possible contradictory testimony. On the evening of the rape, the victim failed to tell the police she had been sodomized. The following day, however, while the victim was being interviewed by a female police officer, the victim stated that she had been sodomized. This so called contradiction is easily explained by the emotional state of the victim on the evening of the incident and by her understandable reluctance to discuss the event with male police officers.

 Defendant also contends that the alleged rape and sodomy occurred at an unlikely time and location and, therefore, the victim's testimony requires corroboration. As noted, the incident occurred at 6:00 p.m., apparently during rush hour traffic, in a car on the shoulder of highway I–270 at the Gravois Intersection. While this incident may have occurred at an unlikely time in a improbable location, defendant fails to demonstrate the "extremely doubtful" nature of the victim's testimony. Because defendant may have been foolhardy in choosing the time and location does not mean the victim's testimony required corroboration.

## VIII

■ Defendant was charged with one count of rape and two counts of sodomy. Defendant claims the trial court erred in submitting Count III, the charge of oral sodomy, to the jury because, he contends, this Count was not supported by sufficient evidence. The jury found defendant not guilty on this Count. Nonetheless, defendant theorizes the submission of this Count to the jury was prejudicial "because it gave the jury an easy out. It could find for the defendant on this one count, which they did, and ease their conscience as to the other counts, claiming that they had given the defendant the benefit of the doubt on the one count and, therefore, had treated him fairly."

■ As was the case with the other two counts, the evidence of oral sodomy consisted of testimony by the victim and a denial by the defendant. Defendant's implicit contention that testimony of the victim alone cannot create a submissible case of oral sodomy is incorrect. "The testimony of a victim of ... sodomy needs no other corroboration for submission of charges against the defendant." *State v. Rogers,* 583 S.W.2d 293, 295 (Mo.App.1979); *See, e.g., State v. Johnson,* 595 S.W.2d 774, 776 (Mo.App.1980). Moreover, under defendant's reasoning any acquittal of a defendant in one count would necessarily prejudice the jury by making them more likely to find him guilty on another. Obviously, that proposition is untenable.

Judgment affirmed.

SMITH, P.J., and PUDLOWSKI, J., concur.